## NATIONAL LOCK CO. v. CHICAGO REGIONAL LABOR BOARD et al.
### No. 446.

District Court, N. D. Illinois, W. D.
Jan. 5, 1934.

Dwight H. Green, U. S. Dist. Atty., and Leo Hassenauer, Asst. U. S. Dist. Atty., both of Chicago, Ill., for Chicago Regional Labor Board.

Hall & Dusher, of Rockford, Ill., for National Lock Co.

WOODWARD, District Judge.

This suit in equity was commenced in the Winnebago county, Ill., circuit court to enjoin the defendants from conducting any hearing or making any report or making any finding or statement of any kind with reference to the walkout on August 31, 1933, of plaintiff's then employees. Upon the presentation of the bill to the judge of the circuit court of Winnebago county, a temporary injunction was issued. The defendants moved in the circuit court to remove the cause to the United States District Court for the Northern District of Illinois, Western Division, which motion, the court infers, was denied. Thereupon, the defendants procured a transcript of the record of the circuit court of Winnebago county and filed the transcript in the office of the clerk of this court.

The defendants filed a motion to dissolve the temporary injunction. Plaintiff filed a cross-motion to remand the cause to the circuit court of Winnebago county. The court was of the view that the questions raised by the motion to remand should first be determined and directed an argument on the question of remanding. The court has heard oral arguments and has also been furnished with written briefs of counsel.

In substance the bill avers that the plaintiff is an industrial corporation having its principal place of business at Rockford; that the defendant Chicago Regional Labor Board

is a voluntary or appointive board, the exact nature of which is unknown to plaintiff; that the defendant Lapp purports to be the executive or acting secretary of said board; that the defendant Mullenbach is in some manner connected with the board as mediator or otherwise, the exact nature of which is unknown to plaintiff; that the defendant Hutchins is supposed to be chairman of the board.

The plaintiff maintains a manufacturing plant at Rockford and now and prior to August 31, 1933, employed several hundred persons in its manufacturing business. On August 31, 1933, certain of plaintiff's employees left plaintiff's employment without having presented any demands with reference to wages, hours of work, or working conditions which had not been promptly attended to and without any unadjusted claims or demands by the plaintiff and its employees. Later a larger number of the employees who walked out on August 31, 1933, returned and have been re-employed by the plaintiff, but a small group has refused to return and insisted upon annoying the plaintiff. The plaintiff now has in its employ as many persons as it can conveniently use in the prosecution of its business.

The bill then avers that the small group of former employees have persistently attempted to annoy and harass the plaintiff and have made representations to a board called the National Labor Board and requested the labor board to conduct some investigation or have some hearing or make some finding of some kind. The bill further avers that the organization's functions and powers, both of the National Labor Board and the Chicago Regional Labor Board, are unknown to the plaintiff. The bill then avers that the plaintiff on November 14, 1933, received a notice in writing signed by the Chicago Regional Labor Board by John A. Lapp, acting secretary, stating that the Chicago Regional Labor Board, representing the National Labor Board, is desirous of obtaining all the facts concerning the industrial dispute between the plaintiff, National Lock Company, and its employees, and with that end in view the Chicago Regional Labor Board would come to Rockford to hear both sides of the case on November 17, 1933. The plaintiff avers that there is no industrial dispute or disturbance at plaintiff's plant and that any hearing by the labor board would tend to disturb the peace and happiness of the community of Rockford and cause unemployment instead of employment. Paragraph 12 of plaintiff's bill provides as follows:

"That said board and all persons connected with it, should not in any way annoy or harass or disturb your orator by any purported hearing, by any report or conclusion or finding and that to do so will be an invasion of the Constitutional rights of your orator in the pursuit of its business and will deprive your orator of its property and business without due process of law, and will deny to your orator the equal protection of the law as said rights are guaranteed by the Constitution of the United States and the Constitution of the State of Illinois."

The bill then prays for a writ of injunction, temporary and permanent, as hereinbefore set out.

The petition for removal states that the defendants are officers and agents of the Chicago Regional Labor Board created and acting by and under the authority and direction of the National Labor Board pursuant to the power conferred under title 1 of the National Industrial Recovery Act, approved June 16, 1933, 11:55 a. m. (15 USCA § 701 et seq.). The petition further avers that the Chicago Regional Labor Board was created by executive order of the President on August 5, 1933, under the power and authority vested in the President under title 1, § 2, of the National Industrial Recovery Act (15 USCA § 702). The officers of the Chicago Regional Labor Board are officers of the United States.

Paragraph 9 of the petition reads as follows:

"That the acts alleged to be threatened to be done by your petitioners are alleged to be threatened to be done at a time when they were engaged in the discharge of their lawfully authorized duties as officers and agents of the Chicago Regional Labor Board and of the United States, and while said officers were engaged in their discharge of their official duties as such officers and agents in making and attempting to make an investigation concerning a violation of the National Industrial Recovery Act, as aforesaid, and while reporting and preparing to report the results of said investigation to said National Labor Board in accordance and in compliance with regulations made in conformity to the provisions of the National Industrial Recovery Act."

The petition then avers that the defendants were directed and authorized by the National Labor Board to investigate and report the results of an investigation and hearing in regard to the industrial dispute at the National Lock Company since August 31, 1933.

Paragraph 12 of the petition reads as follows:

"That this is a suit of a civil nature, in equity, arising under the Constitution or laws of the United States, of which the district courts of the United States are given original jurisdiction, and that the matter in dispute exceeds the sum of Three Thousand Dollars, exclusive of interest and costs, and as such may be removed to the District Court of the United States for the Northern District of Illinois, Western Division thereof, as provided in title 28, USCA, section 71 thereof."

The petition then avers that the controversy is with the defendants as officers of the United States and involves them in the exercise of their official functions as officers and agents of the Chicago Regional Labor Board. The petition then prays for the removal of the cause.

The pertinent statutes are as follows:

"Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, * * * of which the district courts of the United States are given original jurisdiction, in any State court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district." 28 USCA § 71.

"Whenever any cause shall be removed from any State court into any district court of the United States, and the district court shall decide that the cause was improperly removed, and order the same to be remanded to the State court from whence it came, such remand shall be immediately carried into execution, and no appeal or writ of error from the decision of the district court so remanding such cause shall be allowed." 28 USCA § 71.

It will be noted that all cases arising under the laws of the United States are not removable. By the express terms of the statute, only those "of which the district courts of the United States are given original jurisdiction" are removable. What, then, are the cases arising under the Constitution or laws of the United States, of which the District Courts are given original jurisdiction?

"The district courts shall have original jurisdiction as follows:

"(1) First. Of all suits of a civil nature, at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue; * * * or, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States. * * * The foregoing provision as to the sum or value of the matter in controversy shall not be construed to apply to any of the cases mentioned in the succeeding paragraphs of this section. * * *

"(8) Eighth. Of all suits and proceedings arising under any law regulating commerce." 28 USCA § 41.

■ It is the duty of the court to consider the question of its jurisdiction. The jurisdiction of the District Courts of the United States is limited in the sense that they have no jurisdiction except that conferred by the Constitution and laws of the United States. The presumption is that a case is without their jurisdiction unless the contrary affirmatively appears. Farmers' & Merchants' Bank v. Federal Reserve Bank, 274 F. 235 (D. C.).

■ Whether the case is originally instituted in the District Court or whether it comes from the state court by removal, it is, of course, essential in the federal procedure that the right of a plaintiff to institute and maintain the action and the jurisdiction of the court to hear it shall appear on the face of the bill by positive and distinct averment. The jurisdictional facts must be contained in a statement of the plaintiff's cause of action and not by way of anticipation of some defense. Norton v. Larney, 289 F. 395 (C. C. A.), and cases there cited. In Minnesota v. Northern Securities Co., 194 U. S. 48, on page 62, 24 S. Ct. 598, 601, 48 L. Ed. 870, the court said:

"If the record does not affirmatively show jurisdiction in the circuit court, we must, upon our own motion, so declare, and make such order as will prevent that court from exercising an authority not conferred upon it by statute."

■ It is plain from the bill in this case that the suit arises under the Constitution of the United States. The plaintiff grounds its right of protection from interference on certain clauses of the Constitution. It may be said, therefore, that the plaintiff's bill presents a federal question. But in order that the District Court may have jurisdiction, something more than a federal question must be involved. It is not enough that the question arises under the Constitution of the United States, but the suit must be one of a civil nature at law and in equity "where the matter in controversy exceeds * * * the sum or value of $3,000."

Jurisdiction in this case, therefore, depends upon the sum or value in controversy. The bill itself does not state or claim any pe-

cuniary or monetary value of the rights for which it invokes the protection of the court.

█ What, therefore, is the matter in controversy as disclosed by the bill? The matter in dispute is the alleged right of the defendants constituting the Chicago Regional Board, either to conduct a hearing as to a labor controversy at the industrial plant of the plaintiff at Rockford or making any report or making any finding with reference to such labor controversy. The plaintiff claims the right, under the Constitution of the United States, not to be annoyed or harassed or disturbed in its property or business by any hearing or any report of a hearing relative to a labor controversy. The only relief prayed is injunctive relief.

It is apparent, therefore, that if there is jurisdiction, it must be because of the value of plaintiff's intangible rights. In Foster on Federal Practice, § 13, it is said:

"In a suit for an injunction the value of a matter in dispute is that of the object of the bill, namely, the value, to the plaintiff, of the right for which he prays protection, or the value, to the defendant, of the act of which the plaintiff prays prevention."

In Rose's Code of Federal Procedure, § 129, note (g), it is said:

"In a suit for an injunction the matter in dispute is not determined by the amount which the complainant might recover at law for the acts complained of, but by the value of the right to be protected or the extent of the injury to be prevented by the injunction."

In the case of Barry v. Mercein, 5 How. 103, 120, 12 L. Ed. 70, Chief Justice Taney, in delivering the opinion of the court, said:

"In order, therefore, to give us appellate power under this section, the matter in dispute must be money, or some right, the value of which, in money, can be calculated and ascertained."

Again in the same case Chief Justice Taney said:

"The words of the act of Congress are plain and unambiguous. They give the right of revision in those cases only where the rights of property are concerned, and where the matter in dispute has a known and certain value, which can be proved and calculated, in the ordinary mode of a business transaction. There are no words in the law, which by any just interpretation can be held to extend the appellate jurisdiction beyond those limits, and authorize us to take cognizance of cases to which no test of money value can be applied." Kurtz v. Moffitt, 115 U. S. 487, 6 S. Ct. 148, 29 L. Ed. 458; Horn v. Mitchell, 243 U. S. 247–249, 37 S. Ct. 293, 61 L. Ed. 700; Barry v. Mercein, 5 How. (46 U. S.) 103, 12 L. Ed. 70; Perrine v. Slack, 164 U. S. 452, 17 S. Ct. 79, 41 L. Ed. 510.

As stated, the plaintiff in this action asks only that the defendants be restrained from conducting a hearing and making any report, finding, or statement relative to an alleged labor controversy. That is the sole and only matter involved so far as an inspection of the bill discloses any controversy. The court cannot estimate the loss in money, if any, which the plaintiff will sustain should it prevail in its suit, nor can the court say how any calculable money value can accrue to the defendants by conducting a hearing or making its results public. The money value, if any, is too hazy, indefinite and speculative for the court to pass so important a jurisdictional finding upon. But, it is said that the petition for removal states that the sum or matter in controversy exceeds $3,000 and therefore the record shows affirmatively that the jurisdictional facts appear of record. The court cannot accede to this view. Whatever the law may have been it is now well settled that the jurisdictional facts must appear from an inspection of the plaintiff's own statement of his cause of action and if it does not so appear the want cannot be supplied by any statement in the petition for removal. In re Winn, 213 U. S. 458, 464, 465, 29 S. Ct. 515, 53 L. Ed. 873; State of Tennessee v. Union & Planters' Bank, 152 U. S. 454–460, 14 S. Ct. 654, 38 L. Ed. 511; Great Northern R. Co. v. Alexander, 246 U. S. 276–280, 38 S. Ct. 237, 62 L. Ed. 713; Walker v. Collins, 167 U. S. 57, 17 S. Ct. 738, 42 L. Ed. 76; Chappell v. Waterworth, 155 U. S. 102, 15 S. Ct. 34, 39 L. Ed. 85; Postal Telegraph Cable Co. v. Alabama, 155 U. S. 482, 15 S. Ct. 192, 39 L. Ed. 231.

█ Irrespective of what may be stated as a conclusion in the petition for removal that $3,000 is involved, yet, as it is apparent from the whole record and the nature of the case that the jurisdictional amount is not really involved, the general statement in the petition does not avail. In the case of Elliott v. Empire Natural Gas Co., 4 F.(2d) 493 (C. C. A.), Judge Kenyon discusses this question at great length and concludes in accordance with the above statement. The defendants invoke, for jurisdictional purposes, 28 USCA § 41 (8) wherein the District Courts are given original jurisdiction over all suits and proceedings arising under any law regulating commerce. Neither in the bill nor in the pe-

tition for removal is there any suggestion, even remote, that interstate commerce is involved in this controversy. The most that can be said is that the bill avers that the plaintiff is conducting a manufacturing plant at which a number of men are employed. This is far from raising any question under the Interstate Commerce laws.

The court entertains the view that it is without jurisdiction of this cause. Of course, the defendants may in the state courts set up any defense that they may have under the Constitution or laws of the United States. Should the highest court of the state overrule any defenses based upon the Constitution or laws of the United States, then the judgment of the state court may be reviewed by the Supreme Court of the United States. The defendants, therefore, cannot suffer by trying the case in the state courts. No injustice can be done either party by trying the case on its merits in the state forum. An order may be entered remanding the cause to the circuit court of Winnebago county.