**COOK'S ESTATE, TRUSTEES, v. SHEP-PARD, State Comptroller, et al.**

**No. 479.**

District Court, W. D. Texas, Austin Division.

Sept. 11, 1934.

William R. Watkins, of Fort Worth, Tex., for plaintiffs.

James V. Allred, Atty. Gen., and Willis E. Gresham, Asst. Atty. Gen., for defendants.

Before HUTCHESON, Circuit Judge, and WEST and McMILLAN, District Judges.

McMILLAN, District Judge.

In this case plaintiffs attack H. B. No. 154 passed by the Forty-Third Legislature of the state of Texas in 1933 at its Regular Session, c. 162, p. 409 (as amended). This act substantially purports to levy an occupation tax on the production of oil in Texas; the amount of the tax being arrived at by assessing a certain amount against each barrel produced. In so far as the act is pertinent to this case, it is here copied in a footnote.[1]

[1] "Sec. 2. (1) There is hereby levied an occupation tax on oil produced within this State of two (2) cents per barrel of forty-two (42) standard gallons. Said Tax shall be computed upon the total barrels of oil produced or salvaged from the earth or waters of this State without any deductions, and shall be based upon tank tables showing one hundred per cent. (100%) of production and exact measurements of contents. Provided, however, that the occupation tax herein levied on oil shall be two per cent. (2%) of the market value of said oil whenever the market value thereof is in excess of One Dollar ($1.00) per barrel of forty-two (42) standard gallons. The market value of oil, as that term is herein used, shall be the actual market value thereof, plus any bonus or premium, or other thing of value paid therefor or which such oil does or will reasonably bring, if produced in accordance with the laws, rules and regulations of the State of Texas.

"(2) The tax hereby levied shall be a liability of the producer of oil and it shall

Plaintiffs assail this statute as being in violation of the Federal and state Constitutions. A preliminary injunction having been applied for, a three-judge court has been organized as required by law (Jud. Code § 266 [28 USCA § 380]). Upon a hearing before this court on the application for the preliminary injunction, the matter was submitted upon the pleadings, a stipulation, a number of ex parte affidavits, oral argument, and written briefs.

At the outset, plaintiffs are confronted by a motion to dismiss the case, on the ground that the amount in controversy is below the jurisdiction of the court. Inasmuch as that contention, if well founded, is determinative of the entire matter in so far as this court is concerned, the question of the court's original jurisdiction must be first inquired into and determined.

In view of the conclusion the court has arrived at, it will be unnecessary to set out the pleadings at length or to detail in extenso the various constitutional grounds upon which the plaintiffs attack the statute. The plaintiffs are the trustees of the estate of Mrs. M. M. Cook, deceased. According to their pleadings, Mrs. Cook, in the year 1925. she being then a widow, executed and delivered to certain parties oil and gas leases covering various lands owned by her in Shackelford county. In these leases the lessees made the customary agreement to deliver to the credit of lessor, free of cost in the pipe line to which their wells might be connected, an equal one-eighth part of all oil produced and saved from the leased premises. Plaintiffs allege that they, as trustees, own at this time one-half of said one-eighth royalty interest.

They further allege that, since the execution of these leases, there have been produced and saved from said lands many millions of barrels of oil, and at the time of the filing of this suit there was being produced and saved approximately 2,000 barrels of oil per day, that there is in excess of 3,000,000 barrels of recoverable oil under the leased premises, and that the reasonable value of

---

be the duty of such producer to keep accurate records of all oil produced, making monthly reports under oath as hereinafter provided.

"(3) The purchaser of oil shall pay the tax on all oil purchased and deduct tax so paid from payment due producer or other interest holder, making such payments so deducted to the Comptroller of Public Accounts by legal tender or cashier's check payable to the State Treasury.

"Provided, that if oil produced is not sold during the month in which produced, then said producer shall pay the tax at the same rate and in the manner as if said oil were sold.

"(4) The tax herein levied shall be paid monthly on the 25th day of each month on all oil produced during the month next preceding by the purchaser or the producer as the case may be, but in no event, shall a producer be relieved of responsibility for the tax until same shall have been paid; and provided, in event the amount of the tax herein levied shall be withheld by a purchaser from payments due a producer and said purchaser fails to make payment of the tax to the State as provided herein, the producer may bring legal action against such purchaser to recover the amount of tax so withheld, together with penalties and interest which may have accrued by failure to make payments and shall be entitled to reasonable attorney fees and court costs incurred by such legal action.

"(5) Provided that unless such payment of tax on all oil produced during any month or fractional part thereof shall be made on or before the 25th of the month immediately following, such payment shall become delinquent and a penalty of ten per cent. (10%) of the amount of the tax shall be added; such tax and penalty shall bear interest at the rate of six per cent (6%) per annum from date due until date paid.

"(6) The tax herein levied shall be borne ratably by all interested parties, including royalty interests; and producers and/or purchaser of oil are hereby authorized and required to withhold from any payment due interested parties, the proportionate tax due." As amended by Acts Tex. 1933, 1st Called Sess., c. 12, § 1 (Vernon's Ann. Civ. St. Tex. art. 7057a, § 2 (1–6).

"Sec. 6. For the occupation tax, penalties and interest herein provided for, the State shall have a prior and preferred lien on any leasehold interest, ownership of the oil rights, or interest, including oil produced and oil runs owned by the person owing any tax herein, and in addition thereto such lien shall include equipment, tools, tanks, and all other implements used on said lease from which oil is produced.

"Sec. 7. It shall be the duty of the Attorney General to bring legal action for the collection of delinquent taxes herein levied, and a suit instituted shall attach to oil in storage, in transit, or being produced by such operator, and venue for such suits herein provided shall be in the District Court of Travis County, Texas." Vernon's Ann. Civ. St. Tex. art. 7057a, §§ 6, 7.

two per cent. of their interest in the oil royalty reserved is in excess of $3,500.

It is further alleged that the oil produced on these premises is purchased by the Humble Oil & Refining Company, and that that company has been deducting from plaintiffs' one-sixteenth part the 2 per cent. occupation tax levied by the statute attacked, and has, since the date of said tax, been paying said 2 per cent. to the state, along with the tax due by it, the Humble Oil & Refining Company.

Evidence tending to support these pleadings, in so far as they constitute allegations of fact, was introduced on the trial by way of stipulation and affidavits. The evidence further indicated that, commencing in the month of September, 1933, the Humble Oil & Refining Company deducted and paid to the state treasurer the 2 per cent. purported to be due from plaintiffs under the amended act of 1933. There is no showing as to the exact amounts paid during the months of September, October, November, and December, though the evidence and pleadings generally indicate that it did not materially vary from those payments later made. With regard to the succeeding four months, the stipulation is as follows:

"On behalf of the plaintiffs in this case, the Humble Oil & Refining Company, the purchaser of plaintiffs royalty oil, protested the payment and deduction of two (2%) percent from the amounts due plaintiffs for the sale of their oil to said Company on the form hereinabove set forth, the dates of said protests and the amounts paid being as follows:

| | |
|---|---|
| January 25th, 1934 | $52.30 |
| February 24th, 1934 | 76.21 |
| March 25th, 1934 | 71.71 |
| April 25th, 1934 | 83.80" |

Accordingly, it is apparent, both from the pleadings and the evidence, that the monthly payments made out of plaintiffs' oil or the proceeds thereof approximate something between $70 and $80.

It will have been observed in reading the statute that subdivision 4 of section 2 as amended (Vernon's Ann. Civ. St. art. 7057a, § 2 (4) requires the tax levied to be paid monthly on the 25th day of each month on all oil produced during the month next preceding.

It is the contention of the defendants that the amount in controversy here is the tax asserted to be due, and that the tax, as shown both by the pleadings and the evidence, falls far below the amount necessary to confer jurisdiction on a federal court. To avoid this contention, plaintiffs in their brief make the following assertions: "The Court has original jurisdiction to hear and determine the cause, because this suit arises under the Constitution, and the amount or value in controversy exceeds $3,000.00. The plaintiffs' royalty is worth $200,000.00, 2 per cent of it worth at least $3,500.00 and they sue to enjoin the state officials from confiscating 2 per cent of the value of their royalty for a tax for which they are not liable. Another purpose of the suit is to secure a determination that the state has no power to tax their royalty for, or on account of the occupation engaged in by their lessee, of producing oil."

Furthermore, in their amended bill, they make the following allegation: "The 1/16th interest, owned by them, of the total oil produced from said leased premises amounts to approximately 3,750 barrels per month and the monthly amount appropriated and which will continue to be appropriated from the proceeds thereof amounts to about $75.00 per month or $900.00 per year, which, capitalized at 6% per annum, is equivalent to an unlawful appropriation by the defendants of a $15,000 investment, annually, and this will continue during the life of said lease."

Further, they claim that the lien provided for by the statute clouds the title to their royalty interests.

It is our opinion that the defendants' position is well taken and that this court is without original jurisdiction to hear and determine this cause.

It is manifest that the immediate matter at issue between the parties to this case is the question whether the plaintiffs shall or shall not pay the $70 or $80 a month which the defendants assert is due under the statute attacked. The payment of this money involved, monthly in accordance with the law, would dispose of all controversy between the parties, and the lien would be removed and the alleged cloud dissipated without more ado. Accordingly, it is obvious that, if the federal jurisdiction is to obtain in the case, it must be worked out in some other way than a mere consideration of the actual amount of money in dispute between the parties. To avoid this conclusion, the plaintiffs make and urge very earnestly several propositions: First, they assert that their royalty is worth over $200,000, and that the levy of this 2 per cent. tax constitutes a confiscation of at least 2 per cent. of the value thereof; second, they assert that their

suit is to secure a determination that the state has no power to tax their royalty; third, that the capitalization of about $75 a month or $900 a year, which defendants exact of them, is equivalent to an unlawful appropriation of about $15,000 annually; and, fourth, that this tax, by the terms of the statute which levies it, constitutes a lien on their royalty interest and clouds the title to their property to an amount in excess of the jurisdictional requirements. All of those contentions we consider to be untenable.

Plaintiffs' argument proceeds upon the theory that the levy of this monthly tax constitutes a permanent appropriation of their royalty interest, which may now be considered as effective to its ultimate end, and that said ultimate result is to unlawfully appropriate 2 per cent. of what they allege the value of their remaining royalty interest to be. This theory has been many times repudiated by the federal courts. Healy v. Ratta, 54 S. Ct. 700, 703, 78 L. Ed. 1248; Washington & G. Railroad Company v. District of Columbia, 146 U. S. 227, 13 S. Ct. 64, 66, 36 L. Ed. 951; Holt v. Indiana Manufacturing Company, 176 U. S. 68, 20 S. Ct. 272, 273, 44 L. Ed. 374; Vicksburg, S. & P. Railway Co. v. Nattin (D. C.) 51 F.(2d) 1061.

It is a matter of simple mathematical calculation to demonstrate that at the rate of $70 or $80 a month it would take between three and four years for the defendants to exact, and plaintiffs to pay, in excess of $3,000. The history of this legislation shows that it is simply one of the many taxing acts passed by the state of Texas for the purpose of raising revenue from the oil industry. There is no assurance that it will remain on the statute books for any specific length of time, nor is there any positive assurance that the facts and circumstances now complained of will continue to make the plaintiffs subject to payment of this monthly tax at the rate now designated. The entire matter is one of speculation and entirely too indefinite to be the foundation of the limited federal jurisdiction. There is no reason to believe that a suit testing the validity of the statute and determining the matter here in controversy will endure for such length of time as to accumulate taxes in excess of $3,000.

Nor is there any greater merit in the plaintiffs' second contention; namely, that the suit is to secure a determination that the state has no power to tax their royalty. Abstract questions of law do not constitute grounds of federal jurisdiction or even litigation. There must be attached to the abstract questions asserted some substantive rights, which, in a proceeding of this kind, must involve a pecuniary controversy equivalent to the jurisdictional minimum fixed by law.

Nor are the plaintiffs availed anything further by their effort to capitalize the tax on a basis of $900 a year. This contention, as well as others made by them, has been expressly ruled against them by the Supreme Court in Healy v. Ratta, supra. There the court, in part, says: "The contested license fees must be paid annually as a condition precedent to doing the business. But it does not follow that capitalization of the tax is the method of determining the value of the matter in controversy. The bill of complaint does not allege, nor can it be assumed, that the appellant will act to compel compliance with the statute by appellee in future years for which no tax is yet payable, or that the appellee will seek to continue his business in Manchester indefinitely in the future, or that the taxing act will be continued on the statute books, unmodified either as to the amount of the tax or the features to which the appellee objects. These, or like considerations, have led to the conclusion that, in suits to enjoin the collection of a tax payable annually or the imposition of penalties in case it is not paid, the sum due or demanded is the matter in controversy, and the amount of the tax, not its capitalized value, is the measure of the jurisdictional amount. Washington & Georgetown R. R. Co. v. District of Columbia, supra; Holt v. Indiana Manufacturing Co.; 176 U. S. 68, 72, 20 S. Ct. 272, 44 L. Ed. 374; Citizens' Bank v. Cannon, 164 U. S. 319, 17 S. Ct. 89, 41 L. Ed. 451; see Atlantic Coast Line v. Railroad Commission [(D. C.) 281 F. 321], supra; Vicksburg S. & P. Ry. Co. v. Nattin (C. C. A.) 58 F.(2d) 979; cf. Wright v. Mutual Life Insurance Co. of New York (C. C. A.) 19 F.(2d) 117; Elliott v. Empire Natural Gas Co. [(C. C. A.) 4 F.(2d) 493], supra."

Nor are we of the opinion that the statutory lien provided for or the asserted cloud on their title is sufficient to confer the desired jurisdiction. The lien, of course, is only given to secure the amount of tax claimed to be due. The payment of the tax from month to month extinguishes the lien. If it were true that a statutory lien for taxes could be used as a basis for the federal jurisdiction, assuming the amount involved to be the value of the property on which the

lien was fastened, then in every instance in which a tax lien existed the jurisdictional amount would be tested by the value of the property and not by the amount of the tax. In practically all instances in which a tax is levied on property some character of provision is made for a lien, and no court, so far as we are advised, has ever sanctioned the proposition that the value of the property determines the amount in controversy in a simple tax case.

■■ With regard to the matter of the asserted cloud on plaintiffs' title, it might first be observed that, if the law is unconstitutional on its face, as plaintiffs contend, no cloud could be cast by it. Hannewinkle v. Georgetown, 15 Wall. 547, 21 L. Ed. 231. Assuming, however, that the effect of the statute is to cloud the title, the question then arises, To what extent is it clouded. As in the case of the lien, it is only affected to the extent of the unpaid tax. Such cloud as may be cast by the subjection of the property to future taxation is not the subject-matter of federal jurisdiction. As said by the Supreme Court in Washington & G. Railroad Co., supra: "The matter in dispute in its relation to jurisdiction is the particular taxes attacked, and unaccrued or unspecified taxes cannot be included, upon conjecture, to make up the requisite amount."

And again, as said by that court in the Holt Case, supra: " * * * The effect on future taxation of a decision that the particular taxation is invalid cannot be availed of to add to the sum or value of the matter in dispute."

The fallacy lurking in plaintiffs' theory of jurisdiction here lies in the fact that, instead of casting their case upon the matter which is really at issue, that is to say, the monthly tax alleged to be due, they attempt to put in controversy matters which are collateral and incidental to the levy and collection of the tax. If suit were brought for the tax by the Attorney General, as provided for in section 7 of the act (Vernon's Ann. Civ. St. Tex. art. 7057a, § 7), the suit would only be for the. monthly tax alleged at that time to be due. If suit were brought by the plaintiffs under the terms of the suspense statute, which gives aggrieved taxpayers the right to sue for the purpose of recovering taxes paid, then assuming, but not deciding, that the plaintiffs would have the right to maintain such a suit, their action would be and could be only to recover the actual taxes paid. Again, as said by the Supreme Court in Healy v. Ratta, supra:

"That the issue between the parties is the right of the state to collect the tax cannot be gainsaid. There is no question of the authority of a state to suppress the conduct of a business for the nonpayment of an exaction lawfully imposed upon it, or of the appellant's authority to suppress the business here, by threat of criminal prosecution of the salesmen, if this tax is valid. The dispute as to the lawfulness of the tax is the controversy which alone gives vitality to the litigation. Once that is resolved, no other issue survives for decision.

"It has been said that it is the value of the 'object of the suit' which determines the jurisdictional amount in the federal courts, Mississippi & Missouri R. R. Co. v. Ward, 2 Black, 485, 17 L. Ed. 311; Packard v. Banton, 264 U. S. 140, 142, 44 S. Ct. 257, 68 L. Ed. 596. But this does not mean objects which are merely collateral or incidental to the determination of the issue raised by the pleadings. The statute itself does not speak of objects of the suit. It confers jurisdiction only if 'the matter in controversy exceeds * * * the sum or value of $3,-000.' It has never been thought that the federal courts have jurisdiction of suits to restrain the collection of a property tax or other money exaction of less than the jurisdictional amount assailed as unconstitutional, merely because the penalty for nonpayment, which has not been incurred, exceeds that amount. Atlantic Coast Line Ry. Co. v. Railroad Commission (D. C.) 281 Fed. 321. The tax, payment of which is demanded or resisted, is the matter in controversy, since payment of it would avoid the penalty and end the dispute. * * * *"

In arriving at this conclusion, we have not overlooked the decision of the Supreme Court in the case of Berryman v. Board of Trustees of Whitman College, 222 U. S. 334, 32 S. Ct. 147, 56 L. Ed. 225, which has been vigorously urged by the plaintiffs as tending to sustain their position. That case involved the validity of a permanent exemption by contract from all taxation, and it is accordingly easily distinguishable from the case at bar. The case was considered and distinguished by the Supreme Court in Healy v. Ratta, supra.

Accordingly, it is the opinion of the court that it is without jurisdiction to hear and determine the present cause, and the bill should accordingly be dismissed.

A proper order to this effect may be prepared and presented for entry.