**DEWAR et al. v. BROOKS.**
No. H–167.

District Court, D. Nevada.
Oct. 21, 1936.

Milton B. Badt, of Elko, Nev., and Donovan, Leisure, Newton & Lumbard, William J. Donovan, Carl E. Newton, Hiram E. Wooster, and John Howley, all of New York City, for plaintiffs.

E. P. Carville, U. S. Atty., of Reno, Nev., for defendant.

YANKWICH, District Judge.

On June 28, 1934, the Congress of the United States enacted an act entitled "An Act to stop injury to the public grazing lands by preventing overgrazing and soil deterioration, to provide for their orderly use, improvement, and development, to stabilize the livestock industry dependent upon the public range, and for other purposes," authorizing the Secretary of the Interior to establish, in his discretion, by order, grazing districts or additions thereto not exceeding in the aggregate an area of 80,000,000 acres of vacant, unappropriated, and unreserved lands from any part of the public domain of the United States exclusive of Alaska, which are not in national forests, national parks, or monuments or revested railroad grant lands, and which, in his opinion, are chiefly valuable for grazing and raising forage crops. The act is popularly known as the "Taylor Grazing Act." By its terms, the Secretary of the Interior is authorized to make provision for the protection, administration, regulation, and improvement of such districts and to make such rules and regulations as are necessary to accomplish the purposes of the act. To that end, he is authorized to issue or cause to be issued, permits to graze livestock on such grazing districts to such bona fide settlers, residents, and other stock owners as under his rules and regulations are entitled to benefit in the use of the range upon the payment annually of reasonable fees, in each case, to be fixed or determined from time to time. 48 Stat. 1269 (43 U.S.C.A. §§ 315–315n).

On April 6, 1935, the Secretary of the Interior, acting under the provisions of the act, issued an order establishing a grazing district to be known as Nevada Grazing District No. 1, embracing portions of Elko, Eureka and Lander counties, Nevada. On May 31, 1935, the Director of Grazing, acting under the order and with the approval of the Secretary of the Interior, promulgated certain rules entitled "Circular No. 2. Rules for the Guidance of District Advisors in Recommending the Issuance of Grazing Licenses." By the circular, the Director of Grazing required all persons grazing their livestock within grazing districts to obtain from the Director of Grazing temporary licenses to do so. No fees were charged for such licenses. They were valid until January 1, 1936, and were extended later until May 1, 1936. On March 2, 1936, the Director of Grazing, by order of, and with the approval of the Secretary of the Interior, promulgated certain rules entitled "Rules for administration of Grazing Districts," which provided in substance:

"(a) That the Division of Grazing of the Department of the Interior should issue to certain qualified applicants new temporary licenses to graze livestock upon the public range within the grazing districts theretofore established until the end of the so called 'winter grazing season' of 1936–1937 or until May 1, 1937, or until the issuance of 'permits' within the meaning of section 3 of said Act of June 28, 1934 [43

U.S.C.A. § 315b] whichever should be sooner;

"(b) That a fee of five cents per month or fraction thereof for each head of cattle, and a fee of one cent per month for each head of sheep, should be collected from each licensee grazing his livestock on the public range within a grazing district; and

"(c) That, after the issuance of said new temporary licenses, all stockmen should be prohibited from grazing livestock upon or driving them across the public range within a grazing district without such a license."

The defendant Brooks is the duly appointed acting Regional Grazier for the United States for Region 3, which includes the state of Nevada. He is a citizen and resident of the United States, residing at Reno, Nev. The bill of complaint, originally filed in the District Court of the Second Judicial District of Nevada, after stating the above facts, seeks to restrain the enforcement of the rules of March 2, 1936, as illegal and void and beyond the power of the Director of Grazing and the Secretary of the Interior. More specifically, the bill alleges that the act does not give the Secretary of the Interior any authority to issue temporary licenses or to charge a fee for them, that they are not permits, that the size of the fee was fixed without any attempt to determine what would be a reasonable fee in each case, as required by the act. Upon the filing of the bill of complaint, the state district court issued a restraining order and order to show cause. Upon a petition for removal filed on behalf of the defendant, the cause was removed to this court. The plaintiffs have filed a motion to remand. The defendant has filed a motion to dismiss.

The motion to remand challenges the jurisdiction of this court.

■ Under clause 1, § 2, article 3 of the Constitution of the United States, the judicial power of the United States extends to "all Cases * * * arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. Const. art. 3, § 2, cl. 1. This clause defines, in general terms, the judicial power of the United States courts. It does not define the jurisdiction of the District Courts. These courts are the creature of

statute. The Congress, under the power granted by the same article, to "ordain and establish" inferior courts may prescribe their jurisdiction. U.S.Const. art. 3, § 1, cl. 1.

It was intimated, in an early case, that by this provision, it is made the duty of the Congress to vest the whole judicial power. Martin v. Hunters' Lessee (1816) 1 Wheat. 304, 4 L.Ed. 97.

■ None the less it is accepted constitutional doctrine, at the present time, that the effect of these provisions is neither to vest the jurisdiction in the inferior courts nor to limit the right of the Congress to grant, limit, or entirely withhold it. Kline v. Burke Construction Co. (1922) 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Gillis v. California (1934) 293 U.S. 62, 66, 55 S.Ct. 45, 79 L.Ed. 199. Cases are said to arise under the Constitution or laws of the United States, whenever their correct decision depends upon the construction of either or when the right of a party may be sustained by one construction or defeated by another. Cohens v. Virginia (1821) 6 Wheat. 264, 5 L.Ed. 257; Osborn v. Bank of United States (1824) 9 Wheat. 738, 6 L.Ed. 204; Tennessee v. Davis (1879) 100 U.S. 257, 25 L.Ed. 648; Macon Grocery Company v. Atlantic Coast Line Railroad Co. (1910) 215 U.S. 501, 30 S.Ct. 184, 54 L.Ed. 300.

■■ An action such as this which questions orders made by officers of the United States pursuant to an act of the Congress, and which seeks to enjoin their enforcement, comes clearly within the rules laid down by these cases.

But that alone is not sufficient to confer jurisdiction upon this court. For the Congress of the United States, in the exercise of the constitutional power conferred upon it, has added another requirement to jurisdiction by providing that district courts shall have original jurisdiction of "all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority." (28 U.S.C.A. § 41 (1).

Two requirements are thus necessary: (1) That the case arise under the Constitution or laws of the United States; and

(2) that the matter in controversy exceed the jurisdictional minimum of $3,000. See, Dobie on Federal Procedure (1928) § 59, pp. 163, 164; Fishback v. Western Union Telegraph Company (1896) 161 U.S. 96, 16 S.Ct. 506, 40 L.Ed. 630; Simpson v. Geary (D.C.Ariz.1913) 204 F. 507, 510; Delpit v. United States Shipping Board E. F. Corporation (C.C.A.9, 1927) 19 F.(2d) 60; National Lock Co. v. Chicago Regional Labor Board (D.C.Ill.1934) 8 F.Supp. 820. It is asserted on the part of the plaintiffs that the matter in controversy here does not exceed the jurisdictional amount. The plaintiffs' attack is not directed at the validity of the Taylor Grazing Act or of the other regulations made by the Secretary of the Interior pursuant to the authority of the Congress. It is directed solely at the right to collect the grazing fee prescribed by the regulations. The prayers of the complaint are indicative of the right of the plaintiffs claimed to have been invaded. Excluding the formal ones relating to the issuance of a subpœna and temporary restraining order, what the plaintiffs seek is set forth fully in paragraphs 2 and 3 of the prayer. They are:

"Second: That the Court, upon the final hearing of this cause, adjudge and decree that the Director of Grazing and the Secretary of the Interior had no authority, power or jurisdiction to promulgate, or to order or approve the promulgation of, said Rules of March 2, 1936, *requiring the plaintiffs to pay the fees as herein set forth as a prerequisite to grazing their livestock upon the public range within Nevada Grazing District No. 1 under the said temporary revocable licenses.*

"Third: That upon the final hearing of this cause the defendant Brooks be perpetually enjoined from *barring,* or *threatening to bar,* plaintiffs from grazing their livestock upon the public range within Nevada Grazing District No. 1 *in default of payment of the said grazing fee of five cents per month or fraction thereof per head of cattle, and one cent per month or fraction thereof per head of sheep, grazed upon such public range, and in default of obtaining a new temporary license as required by said Rules of March 2, 1936.*" (Italics added.)

Thus the plaintiffs seek to be relieved of the fee required of them before they are allowed to graze their cattle upon the public lands under the temporary licenses. The schedule of fees is attached to the complaint as an exhibit and forms an integral part of it. See Everglades Draining League v. Napoleon B. Broward Drainage Districts (D.C.Fla.1918) 253 F. 246; Travelers' Insurance Company of Hartford, Conn., v. Rabinowitz (D.C.Md. 1935) 9 F.Supp. 353. This exhibit shows that the aggregate sum of the fees assessed for the current year against the plaintiffs is $13,338.49. The largest fee is $2,625 assessed against the Utah Construction Company.

The problem is thus presented whether the jurisdictional minimum is present. That, in turn, depends upon the question whether there are involved in this action separate and distinct rights of the various plaintiffs or whether there is a common interest, right, or title which makes the amount in controversy the aggregate of all the fees the collection of which the plaintiffs seek to prevent. Writers on the subject have adverted to a seeming lack of uniformity in the rulings of the various courts upon the subject. Dobie, on Federal Procedure (1928), § 58, footnotes 40–43. The lack of uniformity is, however, more apparent than real. It arises from the variety of cases in which the question has arisen. The problem in each case or group of cases is to determine what constitutes the matter in controversy. Generally, the value of the right to be protected is considered the test. See, General Petroleum Corporation of California v. Beanblossom (C.C.A.9, 1931) 47 F.(2d) 826; National Lock Co. v. Chicago Regional Labor Board, supra; Dobie on Federal Procedure (1928) § 58, pp. 160–163. In Smith v. Adams (1888) 130 U.S. 167, 9 S.Ct. 566, 32 L.Ed. 895, Mr. Justice Fields defined the meaning of the words "matter in controversy" in this manner: "By matter in dispute is meant *the subject of litigation,*—the matter upon which the action is brought and issue is joined, and in relation to which, if the issue be one of fact, testimony is taken. It is conceded that the pecuniary value of the matter in dispute may be determined, not only by the money judgment prayed, where such is the case, but in some cases by the increased or diminished value of the property directly affected by the relief prayed, or by the *pecuniary result* to one of the parties immediately from the judgment." Smith v. Adams, 130 U.S. 167, at page 175, 9 S.Ct.

566, 569, 32 L.Ed. 895. (Italics added.) And see Simpson v. Geary, supra; Bateman v. Southern Oregon Co. (C.C.A.9, 1914) 217 F. 933.

Where it is sought to enjoin the invasion of a right, the value of the challenged right determines the amount in controversy. See Local No. 7 of Bricklayers', etc., Union v. Bowen (D.C.Tex.1922) 278 F. 271. The pecuniary consequences to the individual party, dependent on the litigation, and "not the principle involved" is the matter in dispute. See Wheless v. City of St. Louis (1901) 180 U.S. 379, 380, 21 S. Ct. 402, 45 L.Ed. 583. Separate plaintiffs are allowed to pool their separate demands in order to total the jurisdictional amount only when they join to enforce a single title or right in which they have a common or undivided interest, not distinct interests. Where the joinder is not grounded upon such common right, but is merely one for convenience, the demand of each must amount to the jurisdictional minimum. See Clay v. Field (1890) 138 U.S. 464, 11 S.Ct. 419, 34 L.Ed. 1044; Troy Bank v. Whitehead & Co., (1911) 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81; Lion Bonding Co. v. Karatz (1923) 262 U.S. 77, 86, 43 S.Ct. 480, 483, 67 L.Ed. 871; Simpson v. Geary, supra. These general principles have been applied to a great variety of situations. A study of the cases leads to the conclusion that confusion must result unless we confine ourselves to cases of the type here under consideration—cases in which the object of the suit was to prevent the collection from the plaintiff of a tax or assessment. In all such cases we find that the courts have held consistently, and without deviation, that the jurisdiction did not exist in the District Court unless the tax or assessment, the payment of which each plaintiff sought to avoid, was in the jurisdictional amount. These cases, ranging over a period of almost 70 years, show a consistency of ruling which should leave no room for doubt as to what the law is in tax matters. In Adams v. Douglas County (C.C.Kans.1868) 1 Fed.Cas. p. 106, No. 52, a nonresident taxpayer sought to enjoin county officers from issuing county bonds and from levying a tax to pay the coupons. It appearing that the liability of the taxpayer did not amount to $500, the then jurisdictional requirement, the Circuit Court declined to entertain jurisdiction. And this, despite the fact that the bill of complaint alleged that the complainant sued "on behalf of all others similarly situated and interested, to-wit, all persons owning property subject to taxation in said county." Delahay, District Judge, said: "We understand the act of congress to mean, not that the party must litigate in reference to something worth more than five hundred dollars, but that he must bring into court, to be adjudicated by it, an interest exceeding five hundred dollars in something, which interest he shall claim to have as against his adversary, or, in case of injunction, *which interest his adversary is about to put in jeopardy by his action, against which he invokes the protection of the courts.* This doctrine, besides being well established by the course of decisions in the supreme court (See Green v. Liter, 8 Cranch, (12 U.S.) 229 [3 L.Ed. 545]; Gordon v. Longest, 16 Pet.(41 U.S.) 97 [10 L.Ed. 900]; Childress v. Emory, 8 Wheat.(21 U.S.) 642 [5 L.Ed. 705]), was recognized at a recent term of the circuit court for this district, Judge Miller presiding, when, in the case of Jewett v. Treasurer of Leavenworth County, Fed.Cas.No.7,312, the suit was dismissed because it did not appear that, in a proceeding to enjoin the treasurer, the complainant's tax exceeded five hundred dollars. Now, by this test, we think it is clear that in neither of the cases does the complainant show himself to be entitled to a status here. In the first case, there is no allegation whatever as to any particular amount of interest he may have to be jeoparded by the issuing of the bonds; the allegation in this respect being simply that he is the owner of real estate liable to be taxed. In the second, he alleges that the amount in controversy exceeds five hundred dollars. This is not the phraseology of the statute; 'matter in dispute,' not amount in controversy, is the language. But while this language may mean something very different from that used in the statute, let us suppose it to be of synonymous import. Is the difficulty thereby avoided? Shall the question of jurisdiction be settled by the assertion of the complainant? We think not. Certainly it cannot be so settled when, as in this case, the showing of the bill is, that the bonds are proposed to be issued by a county to a corporation, and his interest can, upon the face of the bill, arise only from the fact of being as a taxable person subject to a liability, *unless by further show-*

*ing that he has an amount of property, of such a ratio to the whole property of the county as would raise his liability to more than five hundred dollars."* Adams v. Douglas County, 1 Fed.Cas. p. 106, at pages 107, 108, No. 52. (Italics added.)

In King v. Wilson (C.C.Iowa, 1871) 14 Fed.Cas. p. 563, No. 7,810, the court had under consideration a suit brought by several taxpayers seeking to enjoin an illegal state tax. The amount of the tax of each plaintiff was below the then jurisdictional amount. While the case was decided upon the merits, the court expressed doubt as to its jurisdiction in the following language: "On the question of jurisdiction, I am inclined to think that while it may be true that different tax-payers may join in such a bill, yet, that as to each so entitled to join there must be in dispute an amount exceeding the sum or value of $500; in other words, where the interest of each is in its nature several, and the whole amount of tax demanded or demandable of each is less than that sum, so that neither one would have the right to bring the bill alone, the requisite amount to confer jurisdiction cannot be had by aggregating the several amounts of tax each is liable to pay. See Judiciary Act, § 11 (1 Stat. 78); Adams v. Board of Com'rs of Douglas County, Fed.Cas.No. 52." This language has been cited with approval and followed. See Woodman v. Latimer (C.C.Mich.1880) 2 F. 842; Schulenberg-Boeckler Lumber Co. v. Town of Hayward (C.C.Wis.1884) 20 F. 422. In Russell v. Stansell (1881) 105 U. S. 303, 26 L.Ed. 989, the Supreme Court declined to entertain jurisdiction of a direct appeal to it in a suit brought to prevent the levy of an assessment against several taxpayers for the purpose of paying a decree against a levee district where it appeared that the amount assessed against each was less than the jurisdictional requirement of $5,000. Mr. Chief Justice Waite said: "While the appellants, and those whom they have been chosen to represent, are *all interested in the question on which their liability to the appellee depends, they are separately charged with the several amounts assessed against them.* There is no joint responsibility resting on them as a body. The proceeding on his part was to require each of the several land owners in the levee district to pay his separate share of the debt that had been established against the district. The re-

covery was against each owner separately. While the appellants were permitted, for convenience and to save expense, *to unite in a petition setting forth the grievances of which complaint was made, their object was to relieve each separate owner from the amount for which he personally, or his property, was found to be accountable.* An injunction, if granted, would necessarily be to prevent the appellee *from collecting from each owner the amount for which he was separately liable.* It is clear that under the rulings in Ballard Paving Co. v. Mulford, 100 U.S. [147] 148 [25 L.Ed. 591]; Seaver v. Bigelows, 5 Wall. 208 (72 U.S.) [18 L.Ed. 595]; Rich v. Lambert, 12 How. 347 [13 L.Ed. 1017]; Stratton v. Jarvis, 8 Pet. 4 [8 L.Ed. 846], and Oliver v. Alexander, 6 Pet. 143 [8 L.Ed. 349], such distinct and separate interests cannot be united for the purpose of making up the amount necessary to give us jurisdiction on appeal. Although the amount due the appellee from the levee district exceeds $5,-000, his claim on the several owners of property is only for the sum assessed against them respectively. Any owner can relieve himself and his property from all further liability for the district by paying his part of the assessment." Russell v. Stansell, 105 U.S. 303, at page 304, 26 L. Ed. 989. (Italics added.) This language is singularly apposite here because of the insistence of the defendant (to be adverted to further on) that the assertion of the right of the plaintiffs to be relieved of the grazing fee constitutes a common interest in which the plaintiffs join under a single right. And see Ogden City v. Armstrong (1897) 168 U.S. 224, 18 S.Ct. 98, 42 L.Ed. 444; Scott v. Frazier (1920) 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883; on the whole subject see note, "Criterion of Jurisdictional Amount where Several Claimants are Interested." 72 A.L.R. 194, 201 (1931).

In El Paso Water Company v. City of El Paso (1894) 152 U.S. 157, 14 S.Ct. 494, 38 L.Ed. 396, the water company sought to enjoin the city from establishing any waterworks upon the ground that if certain bonds were issued, the water company would be compelled to pay taxes upon its property for interest on the bonds. But the amount of tax not appearing, the bill was dismissed for lack of jurisdiction. The court said: "The bill is filed by the plaintiff to protect its individual interests, and to prevent damage to itself. It must

therefore affirmatively appear that the acts charged against the city, and sought to be enjoined, would result in its damage to an amount in excess of $5,000." El Paso Water Co. v. City of El Paso, 152 U.S. 157, at page 160, 14 S.Ct. 494, 495, 38 L.Ed. 396. This ruling was followed in Colvin v. City of Jacksonville (1895) 158 U.S. 456, 15 S.Ct. 866, 39 L.Ed. 1053, where the court declined to entertain jurisdiction to enjoin the issue, sale and delivery of a bond issue in the amount of a million dollars. The court held that the matter in controversy *was not* the value of the bonds, but the interest of the complainant, which did not correspond to the jurisdictional minimum. In so ruling, the court distinguished Brown v. Trousdale (1890) 138 U.S. 389, 11 S.Ct. 308, 34 L.Ed. 987, upon which the defendant here places great reliance. In Wheless v. City of St. Louis, supra, it was held that separate lot owners who sought to attack an assessment against them for improving a street could not aggregate their assessments for purposes of jurisdiction.

Mr. Chief Justice Fuller said:

"The 'matter in dispute' within the meaning of the statute is *not the principle involved, but the pecuniary consequence to the individual party,* dependent on the litigation; as, for instance, in this suit the amount of the assessment levied or which may be levied, as against each of the complainants separately. The rules of law which might subject complainants to or relieve them from assessment would be applicable alike to all, but each would be so subjected or relieved in a certain sum, and not in the whole amount of the assessment. If a decision on the merits were adverse to the assessment each of the complainants would be relieved from payment of less than $2,000. If the assessment were sustained, neither of them would be compelled to pay so much as that.

"It is true that the assessment has not been made, but the charge is that it is threatened to be made, and the purpose of the bill is to enjoin proceedings about to be taken to that end. We agree with the circuit court that in these circumstances there is no force to the suggested distinction between a case where the assessment has not in fact been made and a case where it has already been made. When made, neither one of these complainants will be called upon to pay a sum equal to the amount of $2,000 nor will any one of the lots be assessed to that amount." Wheless v. City of St. Louis, 180 U.S. 379, at page 383, 21 S.Ct. 402, 403, 45 L.Ed. 583. (Italics added.)

By parity of reasoning, it has been held that where the same tax may be assessed against a plaintiff in several counties, he cannot join the various demands for jurisdictional purposes. Walter v. Northeastern Railway Co. (1893) 147 U.S. 370, 13 S.Ct. 348, 37 L.Ed. 206; Fishback v. Western Union Telegraph Co. (1896) 161 U.S. 96, 16 S.Ct. 506, 40 L.Ed. 630; Lucas v. City of Charlotte, N. C. (D.C.N.C.1936) 14 F.Supp. 163. Illustrative of the modern trend to distinguish between the pecuniary consequence to the individual and the principle involved are the following cases: Eaton v. Hoge (C.C.A.8, 1905) 141 F. 64, 5 Ann.Cas. 487 (where several owners of water rights in a stream seeking to enjoin the obstruction of the stream and diversion of water from it were denied the right to aggregate the amounts of their damages for jurisdictional purposes); Pinel v. Pinel (1916) 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (where children were denied the right to join for the purpose of recovering shares of their father's estate, although their disinheritance was alleged to have been the result of a mistake in the will); Rogers v. Hennepin County (1915) 240 U.S. 184, 36 S.Ct. 265, 60 L.Ed. 594 (where three complainants claiming to represent themselves *and others* like situated [numbering all together 550] sought to enjoin the city of Hennepin to prevent the collection of a tax under $40 assessed against each of them for the year 1913 on account of membership in the Minneapolis Chamber of Commerce).

The latest decision of the Supreme Court upon the subject, Healy v. Ratta (1934) 292 U.S. 263, 54 S.Ct. 700, 702, 78 L.Ed. 1248, was a tax case, which seems to us to place the question beyond cavil.

The plaintiffs below had sought to enjoin the chief of police of Manchester, N. H. from enforcing the Hawkers and Peddlers Act of 1931 (Laws N.H.1931, c. 102) as an infringement of the Fourteenth Amendment. The act required the payment of a tax. The tax was $50 for a state-wide license. The statute fixed local licenses upon a graduated schedule based upon population. That for Manchester was $85 for each license. The plaintiffs

below sought to base jurisdiction upon the ground that the failure to pay the tax would result in the arrest of its salesmen, thereby causing a loss to the business of more than $3,000. The Supreme Court reversed the decree of the lower court, with instructions to dismiss the cause for want of jurisdiction. The court said:

"That the issue between the parties is *the right* of the state to collect the tax cannot be gainsaid. There is no question of the authority of a state to suppress the conduct of a business for the nonpayment of an exaction lawfully imposed upon it, or of the appellant's authority to suppress the business here, by threat of criminal prosecution of the salesmen, if this tax is valid. The *dispute as to the lawfulness* of the tax is the controversy which alone gives vitality to the litigation. Once that is resolved, no other issue survives for decision.

"It has been said that it is the value of the 'object of the suit' which determines the jurisdictional amount in the federal courts, Mississippi & Missouri R. Co. v. Ward, 2 Black, 485, 17 L.Ed. 311; Packard v. Banton, 264 U.S. 140, 142, 44 S.Ct. 257, 68 L.Ed. 596. But this does not mean objects which are merely collateral or incidental to the determination of the issue raised by the pleadings. The statute itself does not speak of objects of the suit. It confers jurisdiction only if '*the matter in controversy* exceeds \* \* \* the sum or value of $3,000.' It has never been thought that the federal courts have jurisdiction of suits to restrain the collection of a property tax or other money exaction of less than the jurisdictional amount assailed as unconstitutional, merely because the penalty for nonpayment, which has not been incurred, exceeds that amount. Atlantic Coast Line Ry. Co. v. Railroad Comm. (D.C.) 281 F. 321. *The tax, payment of which is demanded or resisted, is the matter in controversy, since payment of it would avoid the penalty and end the dispute.* See Ross v. Prentiss, 3 How. 771, 772, 11 L.Ed. 824." (Italics added.)

The facts in this case cannot be distinguished from the facts in the case at bar. The reasoning and grounds for the decision apply with equal force to both. Here, as there, the controversy is the dispute as to the *lawfulness* of the fee demanded. The exclusion of the plaintiffs from grazing upon the public domain is the penalty which follows the nonpayment of the fee. *The fee is the matter in controversy.* Its payment would avoid the penalty and end the dispute.

In Cook's Estate, Trustees, v. Sheppard (D.C.Tex.1934) 8 F.Supp. 21, a three-judge statutory court declined to assume jurisdiction to enjoin the collection of a state tax on oil when it appeared from the complaint that the tax was less than the jurisdictional amount. The court refused to consider the value of the royalty interest alleged to have been, in part, permanently appropriated by the tax as a criterion of jurisdiction. It also declined to entertain jurisdiction upon the ground that the suit was to secure a determination that the state *had no power* to tax their royalty. McMillan, District Judge, wrote for the court: "Abstract questions of law do not constitute grounds of federal jurisdiction or even litigation. There must be attached to the abstract questions asserted some substantive rights, which, in a proceeding of this kind, must involve a pecuniary controversy equivalent to the jurisdictional minimum fixed by law." Cook's Estate, Trustees, v. Sheppard, 8 F. Supp. 21, at page 24. This decision was affirmed by the Supreme Court in a memorandum. Barwise et al., Trustees, v. Sheppard (1934) 293 U.S. 527, 55 S.Ct. 145, 79 L.Ed. 637. To the same effect are Gallardo v. Santini Fertilizer Co. (C.C.A. 1, 1926) 11 F.(2d) 587; Grosjean v. Musser (C.C.A.5, 1935) 74 F.(2d) 741.

[9] These cases establish definitely the principle that in an action which challenges the validity of an annual license tax, the tax demanded is the matter in controversy and the amount of it is the measure of the jurisdictional amount. See Healy v. Ratta, supra, 292 U.S. 263, at page 271, 54 S.Ct. 700, 703, 78 L.Ed. 1248. Neither the ground of attack nor the principle involved is the matter in dispute.

This is the situation here. The plaintiffs do not question the right of the United States government, through the Congress, to regulate the use of any part of its public domain. Nor do they question the right of the Congress to enact the Taylor Grazing act, or the delegation of power to the Secretary of the Interior, under the act, to require the payment of a license fee. They assert a right *not contrary* to the act, but one *under it.*

644

What is that right? Each of them seeks to be relieved, to use the language of the defendant's brief, "of the payment of the grazing fees by virtue of claimed authorized rules and regulations." They question merely the right of the Secretary of the Interior to demand a license fee for a temporary revocable permit. Neither the identity of the object to be attained by all the plaintiffs nor the fact that the tax may, as to all, be illegal as violative of the same rights, can change the fact that *the matter in controversy is the license fee from which each plaintiff is seeking to be relieved.*

In every one of the tax cases to which reference has been made, the relief sought was grounded upon the same right. And yet, because the extent of such right was measurable in money which differed as to each individual, the courts held that no jurisdiction could attach unless the pecuniary consequences to each plaintiff was in the jurisdictional amount.

If (as the defendant urges) the fact that all these parties ask to be relieved of the fees and seek to prevent the United States, through its officers, from collecting the amounts due, were sufficient to give us jurisdiction by aggregating the fees, then the ruling in each of these cases would have been different. For in each of them the plaintiff sought to establish jurisdiction by aggregating the amount actually collectible from him with that of others or by alleging the injury in the term of the capitalized value of the tax. Yet the courts declined to approve such methods of forcing jurisdiction upon the District Court. Nor is the bill of complaint saved from the application of these principles by the fact that the plaintiffs allege a community of interest as justification for joining in the same complaint. The question of jurisdiction cannot be determined by the rules of joinder. And such allegation cannot save the complaint. Rogers v. Hennepin County, supra; Lion Bonding Co. v. Karatz, 262 U.S. 77–86, 43 S.Ct. 480, 67 L.Ed. 871; Adams v. Douglas County, supra.

We conclude that this court is without jurisdiction to entertain the bill of complaint. This conclusion makes it unnecessary to discuss any of the other questions raised or to rule on the motion to dismiss. The motion to remand will be granted.