Mr. Justice CATRON.
James Ward charges the Mississippi and Missouri Railroad Company with having created a nuisance by erecting a bridge across the Mississippi river at Rock Island, and prays that the nuisance may be abated.
The respondent resists the relief prayed, on the ground, among others, that the complainant docs not stand in a position to maintain this suit.
Ward was part owner of three steamboats — and commander of one of them — navigating the river in successive trips between St. Louis and St. Paul; and which boats, the complainant alleges, were much injured and delayed by the bridge, which he avers is a great obstruction to navigation — amounting to a prominent nuisance. It is insisted that Ward cannot sue alone, and could only come before the Court jointly with the other part owners *492 of the vessels injured and delayed. He seeks no damages by his bill, but' only ah abatement of the nuisance, as a preventive remedy against future injury and delay.
,A bill in equity to abate a public nuisance, filed by one who has sustained special damages, has succeeded to the former mode in England of an information in Chancery, prosecuted on behalf of the Crown, to abate or enjoin the nuisance as a preventive remedy. The private party sues rather as a public prosecutor than on his own account ;• and unless he shows that he has sustained, and is still sustaining, individual damage, he cannot be heard. He seeks redress of a continuing trespass and wrong against himself, and acts in behalf of all others, who are or may be injured; nor is there more necessity for joining with his partners in the prosecution than there is for his joining in the suit any other person, as complainant, who has sustained injury. Gibbons on Dilapidation, 402. The character of the nuisance and the sufficiency of the damage sustained is to be judged by the Courts. Iverson vs. Moore, (Ld. Ray, 486; 1 Salk., 15); Gibbons on Dilapidation, 403. But the want-of a sufficient amount of damage having been sustained to give the Federal Courts jurisdiction, will not defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern.
■ It is next objected that there are not proper defendants brought before the Court. The Chicago and Rock Island Railroad Company, who own the bridge on the Illinois side of the river/ and the Bridge Company who built it, and also A. C. Flagg, who .holds a mortgage on the bridge as trustee for others who advanced money to aid in its erection, are not made parties to the suit. The Chicago and Rock Island Railroad Company, and the Bridge Company, are incorporated, and located in the State'of Illinois, and Flagg resides in the State of New York. The alleged nuisance is situate in Iowa, and being local, the suit could only be brought in that State; and, therefore, the Court had np power to bring these parties in interest before it.
' If the Iowa corporation could have been individually indicted for ere&ting the nuisance, no reason exists why it should not be *493 individually prosecuted in Chancery for its abatement. But the" facts present a much more serious objection to the complainant’s right to sue than either of those above stated. The Constitution of Illinois calls for the middle of the Mississippi river as the western boundary of-that State, and as Iowa was admitted into the Union after Illinois, a line in the middle of the river is the dividing line between the States.
The complainant sued in the Federal Court because of his citizenship in a different State from the defendant; and the United States District Court holden in Iowa exercised the same jurisdiction that a State Court of Iowa could have exercised, and no more. It had no power beyond the middle of the river. On that part of the bridge within Iowa, and its piers, the Court below acted, and ordered that the structure should be removed.
In considering the merits and the other question as respects the complainant’s right to sue, some additional facts need be stated.
This bridge is one thousand five hundred and seventy feet long, and the number of piers is six. Three of them are on the Iowa side of the river. The draw pier is the fourth; it is three hundred and eighty-six feet long at its bottom, and forty-five feet wide. The draw space on the Iowa side is one hundred and eleven feet, and on the Illinois side one hundred, and sixteen feet wide in the clear. The distance from centre to centre of the small piers is two hundred and fifty-seven feet. The long pier stands at an angle with the thread of the current of about twenty-four degrees, and the small piers are nearly on a line with the thread of the current. The Illinois draw passage is directly over the deepest channel of the river, and directly over the usual track of steamboats before the bridge was built. The Mississippi is about one thousand four hundred and ten feet wide at the bridge, and the middle of the river is about eighty feet westwardly of the long pier.
The Illinois draw passage (one hundred and sixteen feet), the width of the long pier (forty-five feet), and the eighty feet between it and the eastern line of Iowa cover a space of two hundred and forty feet of water-way, and which embraces the main channel, *494 where steamboats have at all times navigated. It was at the' long pier, and in the Illinois draw east of that pier, that the complainant’s boats sustained the injuries on which he found his '•right to sue the Iowa corporation, and to proceed against the bridge in rem as a public nuisance.
An indictment could only have been prosecuted against the owner for keeping up the nuisance in Illinois in the Courts of that State, because the nuisance was a trespass and crime against the laws of Illinois, and the injuries to the complainant’s boats giving him the privilege to sue and abate the obstruction was as local as the public right to indict. He asks nothing from the person of the defendant, but seeks to remove a local object, because he has sustained special damage from that object.
The District Court had no power over the local object inflicting the injury; nor any jurisdiction to inquire of the facts, whether damage had been sustained, or how much. These facts are beyond the Court’s jurisdiction and powers of inquiry, and outside of the case.
The District Court ordered three spans of the bridge and three of its piers to be removed, extending to middle of the river: And what would be the consequence if we were to affirm that decree ? It would, as a consequence, render the bridge useless throughout, but it would not materially remedy the nuisance complained of. The navigation would certainly not be improved so far as the complainant is concerned by removing the Iowa end of the bridge. The cross currents alleged to exist would remain; the large eddy at the lower end of the long pier, and the obstruction to the Iowa draw-passage by the eddy, would still remain.
In the next place: Is the bridge west of the Illinois boundary an. unreasonable obstruction, and therefore a nuisance, that a Court of Chancery can lawfully remove ? In considering this question we must be governed by the same rule on which a Court of law could proceed in case of an indictment against the Bridge Company for committing the nuisance; and the rule is that if the abrigdment of the right of passage occasioned by the erection was for a public purpose and produced a public benefit» *495 and if the erection was in a reasonable situation, and a reasonable space was left for the passage of vessels on the river, then it is not an unreasonable obstruction and indictable. Rex vs. Russell, (6 Barn. & Cresw., 566; 13 How., 623; 15 Wendell, 133.)
Then, again, the obstruction to navigation must be plainly a nuisance within this, rule before it can be removed by decree. If the proceeding was by indictment, and. the jury doubted whether the obstruction was a nuisance or not, they would be instructed to acquit the defendant; .and so, if this case was referred to a jury to try the fact, and they doubted, they would be bound to acquit. And the same rule applies in a Court of Chancery where the Court ascertains the fact of nuisance. 2 Story’s Com. on Eq., 203, 204.
To say the least in this case, it is certainly very doubtful whether the bridge on the Iowa side is a serious obstruction, amounting-to a nuisance.
The smaller piers on that side are parallel with the current passing through them, and do not occasion much impediment of navigation to boats without chimneys, nor to rafts.
The main channel where steamboats uniformly pass before the bridge was built, and must now pass, is eastwardly of the middle • of the river, and on the Illinois side. On this state of the facts, it must be admitted that it is hardly possible to deal with the whole obstruction of any bridge across the Mississippi river, it being a boundary between States almost throughout its whole length. And it is difficult to decree in any case of material obstruction, unless the whole nuisance is in the power of the Court. The case before us presents the difficulty very prominently. The plaintiff’s ease mainly rests on the fact that the draw pier is at an angle to the current, and it is assumed that if this pier was re-constructed parallel with the current, and the draw on the Illinois side was widened the obstruction would be removed to a degree making it short of a nuisance. Now this is a question that we cannot examine, nor reach by a decree, as the relief suggested is clearly beyond our power in this suit Congress could extend the jurisdiction of the Federal Courts across the Mississippi river by enlarging the judicial districts oa *496 either side; or it could confer concurrent jurisdiction on adjoining districts, extending to trespasses and torts committed within the shores of the river. But the Courts of justice cannot do it unless authorized by an Act of Congress.
It is also insisted with great earnestness that the public is entitled to the free navigation of the whole river from bank to bank, and as the western half of the river is undeniably within the jurisdiction of Iowa, it follows that the bridge is a clear nuisance within that district to the extent of half its length. According to this assumption no lawful bridge could be built across the Mississippi anywhere; nor could the great facilities to commerce, accomplished by the invention of railroads, be made available where great rivers had to be crossed.
It is ordered that the bill be dismissed and that the costs be divided — each party paying its own.