BOARD OF TRADE OF CITY OF CHICAGO v. CELLA COMMISSION CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 16, 1906.)

No. 1,992.

1. EXCHANGES—PROPERTY IN QUOTATIONS—RIGHT TO PROTECTION BY INJUNCTION.

The Chicago Board of Trade has a property right in the market quotations made and posted in its exchange, and is entitled to protection in equity by injunction against the use of such quotations by another without its consent for such length of time after they are made as to enable it to secure to itself the benefit of such right; nor is it required to furnish its quotations to one conducting a bucket shop.

[Ed. Note.—For cases in point, see vol. 21, Cent. Dig. Exchanges, § 16.

Quotations of prices and transactions on exchanges, see note to Sullivan v. Postal Tel. Cable Co., 61 C. C. A. 2.]

2. COURTS—JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.

In a suit to enjoin a threatened or continued commission of certain acts, the amount or value involved, for the purpose of determining the jurisdiction of a federal court, is the value of the right which complainant seeks to protect from invasion, and not the sum he might recover in an action at law for the damage already sustained; nor is he required to wait until it reaches the jurisdictional amount.

[Ed. Note.—Jurisdiction of circuit courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

3. SAME.

A suit for an injunction to protect a claimed property right, from which it is alleged and shown that complainant realized $30,000 per year, and which right is denied by defendant, involves a sufficient amount to be within the jurisdiction of a federal court.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

For opinion below, see 121 Fed. 1012.

Henry S. Robbins, for appellant.

Chester H. Krum, for appellee Cella Commission Co.

Before SANBORN and HOOK, Circuit Judges.

HOOK, Circuit Judge. The Chicago Board of Trade exhibited its bill to enjoin the Cella Commission Company and others from surreptitiously acquiring and using its continuous market quotations. Upon final hearing the bill was dismissed, upon the ground that the quotations were the result of gambling transactions upon the floor of

its exchange, and did not constitute a species of property which appealed to the conscience of a court of equity for protection.   So far as these questions are concerned, the record before us is substantially the same as that in the case of Board of Trade v. Stock Co., 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031, and therefore the decree of the Circuit Court cannot be sustained upon the grounds assigned.   In the Stock Co. Case no application for the right to use the quotations was made, and there was no proof that the Christie Company was conducting a bucket shop.   In the case before us such an application was made, but was rejected by the Board of Trade.   On the other hand, the proof here is conclusive that the Cella Company was conducting a bucket shop, within the accepted meaning of that term.   So this difference between the cases is immaterial, for, if for no other reason, it is well settled that the Board of Trade is not required to furnish its market quotations to those engaged in such occupation.   Board of Trade v. Stock Co., supra; Central Stock & Grain Exchange v. Board of Trade, 196 Ill. 396, 63 N. E. 740; Smith v. Western Union, 84 Ky. 664, 2 S. W. 483.

It is contended by the defendants that the record does not show that there is involved in this case the jurisdictional amount or value. In the bill of complaint it is averred "that the amount involved and matters in dispute in this suit, exclusive of interests and costs, is much more than the sum of $2,000."   Assuming that this averment is traversed in the answer (which is doubtful), we are of the opinion that the evidence sustains it.

In a suit to enjoin a threatened or continued commission of certain acts the amount or value involved is the value of the right which the complainant seeks to protect from invasion, or of the object to be gained by the bill.   It is not the sum he might recover in an action at law for the damage already sustained, nor is he required to wait until it reaches the jurisdictional amount.   In City of Hutchinson v. Beckham, 55 C. C. A. 223, 118 Fed. 399, a decree was sought to enjoin the enforcement of an illegal license tax imposed upon complainant's business by a city ordinance, which was being enforced by the arrest of its employés.   We held that for jurisdictional purposes the amount involved was the value of complainant's right to conduct its business without being subjected to such a burden, and not merely the amount of the tax demanded.   See, also, Railroad v. Ward, 67 U. S. 485, 17 L. Ed. 311; Louisville & N. R. Co. v. Smith, 63 C. C. A. 1, 128 Fed. 1; Texas & P. R. Co. v. Kuteman, 4 C. C. A. 503, 54 Fed. 547; Amelia Milling Co. v. Tennessee, etc., Co. (C. C.) 123 Fed. 811; Humes v. Fort Smith (C. C.) 93 Fed. 857; Railway Co. v. McConnell (C. C.) 82 Fed. 65; Smith v. Bivens (C. C.) 56 Fed. 352; Whitman v. Hubbell (C. C.) 30 Fed. 81; Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648.

In the case before us the Board of Trade claims a right of property in the market quotations gathered upon the floor of its exchange, and also the right to control their distribution and use.   Upon the faith of the validity of these claims, it entered into a contract with two telegraph companies for the distribution of the quotations to those

approved by it, which yields it an annual revenue of $30,000. The contract obligates the Board of Trade to use all reasonable endeavors to protect its property right in the quotations against purloiners thereof. The contentions of the defendants and their acts are wholly at variance with the existence of any such right of property or control. They assert, somewhat inconsistently, that the quotations are the result of gambling transactions, and therefore not the subject of property, and also that they are affected with a public interest, and the right to the general use by all desiring them cannot be prohibited or restrained by the Board of Trade. It is obvious that, if the position of the defendants be sustained, the rights of the Board of Trade would either cease to exist or become of merely nominal value. The real value of the property claimed arises from the right of selection and exclusion of those desiring the use thereof, and to prescribe terms and conditions; and it is this property and the accompanying right, which, denied by the defendants but yielding the revenue above indicated, are sought to be protected by the bill of complaint. This is a sufficient showing of a jurisdictional amount or value in controversy.

The proof is clear that the defendants were using the quotations of the Chicago Board of Trade, not only those of the opening and closing of the daily markets, but also those intermediate and continuous; that is to say, those whereby the price of a commodity is quoted at intervals of less than 10 minutes. It also clearly appears that they obtained them in an unauthorized and irregular manner. But it is said that there is no evidence that they were used while they were live quotations, and while a property right in them subsisted in the Board of Trade. In effect, counsel contends that, when the quotations were taken off of the wires and posted on the blackboard of the defendants and used in their business, they had been superseded by later ones and had therefore become in a sense surrendered and dedicated to the public, so that anyone might use them without let or hindrance. This position is suggested by the following observation of the Supreme Court in the Christie Case:

"Time is of the essence in matters like this, and it fairly may be said that, if the contracts with the plaintiff are kept, the information will not become public property until the plaintiff has gained its reward. A priority of a few minutes, probably, is enough."

But there was a witness who testified that he went into the office of the Cella Company, and saw that they were posting quotations of the Chicago Board of Trade which were being posted at the same time in the Merchants' Exchange of St. Louis, of which he was a member, and which was authorized to receive them. This was all of the direct evidence upon this particular phase of the case. No witness for the defendants testified that they were not receiving and using them simultaneously with those who were rightfully doing so. Aside from the testimony of the witness, all of the fair inferences are against the defendants in this matter. We cannot believe that they would entertain wagering contracts upon the basis of a quotation of the market price of a commodity which was known to have been super-

seded by a later one. To do so would be betting upon the happening of an event that either had already transpired, or was, to some extent, at least, foreshadowed by the later evidence of the trend of the market. The right of property in the quotations endures for a sufficient length of time to enable the Board of Trade to avail itself of the benefits thereof, and if those who are in the position of the defendants are permitted to operate so closely in point of time that they have practically the same use as one who is authorized to receive them, the right would be of doubtful value.

The decree of the Circuit Court is reversed, and the cause is remanded, with direction to enter a decree in favor of the complainant.