**CITY OF MEMPHIS v. INGRAM, Administrative Officer and County Judge, et al.**

No. J–703.

United States District Court,
E. D. Arkansas, Jonesboro Division.

June 25, 1951.

Wils Davis, Frank Gianotti, Jr., Kenneth Larkey, all of Memphis, Tenn., for plaintiff.

James C. Hale, John Fogleman, Marion, Ark., Murray O. Reed, Little Rock, Ark., for defendants.

TRIMBLE, Chief Judge.

The City of Memphis, a municipal corporation of the State of Tennessee, brought this action against W. K. Ingram, County Judge of Crittenden County, Arkansas; Arkansas and Memphis Railway Bridge and Terminal Company, a corporation; and Crittenden County, Arkansas. It is seeking an injunction to prevent the defendants from dismantling the roadways, sometimes called wagon roadways, which are bracketed on to the sides of what is commonly called the Harahan Railroad Bridge, owned and operated by the bridge company, across the Mississippi River, between Crittenden County, Arkansas, and Memphis, Shelby County, Tennessee. At the time the matter was presented to the court for a temporary restraining order, without notice to opposing parties, the Court refused to grant a restraining order against the County Judge, and the plaintiff then amended and asked a restraining order against him as "Administrative Officer" of the county. The restraining order was granted and the matter set down for hearing. At the hearing on June 6th, 1951, the court advised the plaintiff that unless he dismissed the action against the Bridge Company, the court would hold that there was no diversity of citizenship, and upon that ground the court was without jurisdiction. Thereupon, the plaintiff dismissed the action against the Bridge Company, so that the parties defendant are now: W. K. Ingram, Administrative Officer and County Judge of Crittenden County, Arkansas, and Crittenden County, Arkansas.

The Court heard evidence for two days, heard the arguments of counsel, and considered the briefs filed in this case, upon a motion for a preliminary injunction, and defendants' motions to dismiss contained in their answer.

The defendants in their answer and motion to dismiss attacked the jurisdiction of the court upon several grounds; which will be noted as the court considers and passes upon the issues.

Plaintiff says that the dismantling of these roadways would be an unlawful deviation from the plans and specifications for such bridge without approval or modification as provided in Section 491, Title 33, United States Code Annotated. The sections of the statute upon which plaintiff relies to confer jurisdiction upon this court

are Sections 491 to 498, inclusive, of Title 33 U.S.C.A. These sections deal primarily with the construction or building of bridges over the navigable waters. The Constitution of the United States gives the United States exclusive jurisdiction over such waters and any threatened or existing obstruction to navigation thereon. Section 495, contains the following provisions: "and in case of any litigation *arising from any obstruction or alleged obstruction to navigation* created by the construction of any bridge under this chapter, section 491 to 498, inclusive, the cause or question arising may be tried before the district court of the United States in any district which any portion of said obstruction or bridge touches." (Emphasis supplied.)

█ Plaintiff alleges that its right of action arises under the provisions of these sections. It does not state in its complaint, the amendments thereto, or motions for injunctive relief in what way the obstruction to navigation, if any, would affect its right which it seeks to protect, or what special damage it would sustain by having the navigation of the Mississippi River obstructed. Mississippi & Missouri R. Co. v. Ward, 2 Black 485, 67 U.S. 485, Syl. 1, page 492, 17 L.Ed. 311: "A bill in equity to abate a public nuisance, *filed by one who has sustained special damages,* has succeeded to the former mode in England of an information in Chancery, prosecuted on behalf of the Crown, to abate or enjoin the nuisance as a preventive remedy. The private party sues rather as a public prosecutor than on his own account; *and unless he shows that he has sustained, and is still sustaining individual damage,* he cannot be heard."

█ The special damage the plaintiff must suffer to give rise to a federal question, is damage caused by the obstruction to navigation, and the mere presence of a possible federal question, that is an obstruction to navigation, which does not affect plaintiff's right of recovery, but only goes to the jurisdiction of the court, is not sufficient. In every case in point cited by plaintiff, or the defendants, in their briefs or arguments, or in those found by

the court, where the jurisdiction has been sustained in the District Court under these sections, the parties have alleged special damages which they suffer by reason of the obstruction to navigation from the construction or maintenance of a bridge or bridges.

In City of Benwood v. Interstate Bridge Co., D.C., 30 F.Supp. 952, a federal question was injected for the purpose of jurisdiction, but jurisdiction on the federal question failed and the case was retained by the court on an allegation of diversity of citizenship.

In United States v. Norfolk-Berkley Bridge Corp., D.C., 29 F.2d 115, there was an allegation of actual obstruction to navigation by the owner of a vessel and the United States, whose vessel had been damaged by collision with the alleged obstruction.

In Bellaire, Benwood & Wheeling Ferry Co. v. Interstate Bridge Co., 4 Cir., 40 F.2d 323, Syl. 6: "Bill seeking to enjoin erection of bridge across navigable stream, as obstacle to operation of ferry, presented question of federal law, as respects jurisdiction."

E. A. Chatfield Co. v. City of New Haven, C.C., 110 F. 788, 789, was a suit by several owners of boats on the West River, to abate a nuisance, and the facts stated in the opinion show: "That all the plaintiffs are engaged in interstate and domestic commerce in navigating the said West river * * *. That the said defendants, for a period of many years last past, have maintained, and continue to maintain, an obstruction in the navigable waters of said river * * * such obstruction consisting of a bridge * * *. That the plaintiffs, by reason of said obstruction, have been prevented from reasonable navigation of said river * * *."

At page 793 of 110 F. the Court said: "It has not been questioned that if congress had authorized the construction of a bridge over navigable waters, in accordance with plans approved by the secretary of war, or by a named board of engineers, and the bridge should be constructed in such defiance of the approved

plans *as to obstruct navigation*, that a bill in equity in behalf of an individual *specially injured by such obstruction* against the corporations which are constructing the bridge could be sustained in the circuit court (now district) upon the ground that the structure is in violation of the laws of the United States. Miller v. New York, 13 Blatchf. 469, Fed.Cas.No.9,585."

It is not sufficient for the plaintiff to allege, as it has here, that there is some violation of a federal statute, but they must allege that they have suffered or will suffer special damages by the violation or failure to comply with the federal statute, and prove the facts alleged if challenged, and, further, in this instance that these special damages flow from an obstruction to navigation. The federal question must be substantial, and a construction of the federal law necessary to a decision of plaintiff's rights. Mississippi & Missouri Railroad Co. v. Ward, 2 Black 485, 67 U.S. 485, 17 L.Ed. 311. In this case, if plaintiff has a cause of action cognizable in this court, it is not founded upon an obstruction to navigation, for plaintiff neither alleges nor attempts to prove that it is engaged in navigation, or if it is that the proposed change in the bridge, by the removal of the roadways would adversely affect plaintiff's right of navigation.

"The claim of federal right must be substantial. One cannot confer jurisdiction on a federal court over a controversy resting on State law by inventing frivolous connections between the thing claimed and the Constitution or an Act of Congress. Restrictions on the jurisdiction of the federal courts are part of the division of power between state and federal authority, and are not satisfied by merely verbal formulae." Bunn, Jurisdiction and Practice of the Courts of the United States, Fifth Edition, p. 56, Sec. 7.

"Where a complaint in a federal court is so drawn as to seek recovery directly under the Constitution or laws of the United States, the court must entertain the suit, except: (a) where the alleged claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or (b) where it is wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939.

The federal question here alleged is not substantial and is no more than an effort to confer jurisdiction on this court, as plaintiff seeks no recovery or relief caused "by the obstruction or threatened obstruction to navigation," and is, therefore, merely colorable. Upon the basis of a federal question jurisdiction is denied.

Defendant denies that the plaintiff has the authority to bring this action, and denies that the parties defendant are proper parties. But assuming, without deciding, that the plaintiff has such authority and the defendants are proper parties, there is a diversity of citizenship. Even so, the jurisdictional amount in controversy must be present, or the court is still without jurisdiction.

In the case of Mississippi & Missouri Railroad Co. v. Ward, 2 Black 485, 67 U.S. 485, 492, 17 L.Ed. 311, the U. S. Supreme Court said:

"But the want of sufficient amount of damage having been sustained to give the Federal Courts jurisdiction, will not defeat the remedy, as the removal of the obstruction is the matter in controversy, *and the value of that object must govern.*

"Further, it is the settled rule that the amount in controversy in injunction suits is not the sum which the plaintiff might recover in a suit for damages already sustained, but the amount or value of the right which the complainant seeks to protect from invasion, or of the object to be gained by the bill." Local No. 7 of Bricklayers, etc., Union v. Bowen, D.C., 278 F. 271, 273, citing Board of Trade of Chicago v. Cella Commission Co., 8 Cir., 145 F. 29; Nashville, C. & St. L. Ry. Co. v. McConnell, C.C., 82 F. 65; Texas & P. Railway v. Kuteman, 54 F. 548, 552. See also Mississippi & Missouri Railroad Co. v. Ward, 2 Black 485, 67 U.S. 485, 17 L.Ed. 311.

In Dewar v. Brooks, D.C., 16 F. Supp. 636, 639, the court said: "The problem is thus presented whether the jurisdictional minimum is present. * * *

The problem in each case or each group of cases is to determine what constitutes the matter in controversy. Generally, the value of the right to be protected is considered the test. (Citing cases.) In Smith v. Adams (1888) 130 U.S. 167, 9 S.Ct. 566, 32 L.Ed. 895, Mr. Justice Fields defined the meaning of the words 'matter in controversy' in this manner: 'By matter in dispute is meant the subject of litigation,— the matter upon which the action is brought and issue is joined, and in relation to which, if the issue be one of fact, testimony is taken.' "

In McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 785, 80 L.Ed. 1135, Mr. Chief Justice Hughes delivered the opinion of the court, and he there said:

"He (the plaintiff) must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. * * * As he is seeking relief subject to this supervision (of the court), it follows that he must carry throughout the litigation the burden of showing that he is properly in court. * * *

"Here, the allegation in the bill of complaint as to jurisdictional amount was traversed by the answer. * * * and the record contains no evidence to support the allegation of the bill. There was thus no showing that the District Court had jurisdiction and the bill should have been dismissed upon that ground."

See also First English Lutheran Church v. Evangelical Lutheran Synod, 10 Cir., 135 F.2d 701, 703: "Diversity of citizenship is relied upon for federal jurisdiction. In an action of this kind the value of the right which plaintiff seeks to protect is the yardstick with which to measure the question of jurisdiction." Citing Glenwood Light & Water Co. v. Mutual Light & Power Co., 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174; Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111.

From the allegations in plaintiff's complaint, and amendments thereto, particularly with reference to the prayer of the complaint it would seem that the object of this controversy is to "protect the continuous operation of said roadways attached to the Harahan Bridge for the use and benefit of the citizens of Memphis, etc." Plaintiff makes no allegations of the pecuniary value of this object, nor does it set forth any elements of value or damage from which the court could find the value of the object. It is true that in the prayer to the amendment to the complaint plaintiff alleges that the roadways have at present a value of several hundred thousand dollars, and that if the injunction does not issue the value of the roadways will be reduced to a nominal sum. But this was challenged by the defendants. At the hearing on the question of jurisdiction, plaintiff did not offer to prove, or prove, either the present value of the roadways nor the loss in value which would occur if the injunction was not issued. There is considerable evidence offered by the parties as to the expense of dismantling, the cost of maintenance, repairs, and the price of junk, or second hand materials. If it be construed that the object of the controversy and the amount in controversy is the value of the roadways in place in continuous operation as roadways, then there is likewise no allegation of that pecuniary value, and no allegation nor proof of the elements and loss of value if the injunction is not issued, that is the damages or loss the plaintiff would sustain by the discontinuance of the roadways as an operating highway.

There being no sufficient allegation of the amount in controversy and no evidence as to what that amount is, the jurisdiction of the court as to diversity of citizenship is denied.

There was considerable testimony as to what might happen at some future date, should this country lose a war to some hypothetical enemy, who might invade the country by air, and the present modern highway bridge across the Mississippi River be bombed out of existence, or be sabotaged, but even then no attempt was made,

either in the allegations or the proof, to fix any value to the right to keep in existence the present roadways. Such future happenings, to say the least were speculative and uncertain, and there is neither imminence, immediacy or certainty of such necessity occurring soon. Adjectives do not take the place of proven facts. "Many things, all problematical, may occur to make the assessment for the next year and for future years wholly different. * * * Only prophetic ken of a rare order could forecast what will ensue. *Jurisdiction is based on actuality, not on prophecy*, the pressure of a grievance immediately felt and presently measurable in money of the jurisdictional amount. Speculative anticipations that conditions, from which present ills, not now sufficient in amount to give jurisdiction, flow, may in time aggregate the necessary amount, will not support jurisdiction." Vicksburg, S. & P. Ry. Co. v. Nattin, Tax Collector, 5 Cir., 58 F.2d 979, 980.

The general statutes of Arkansas on the subject of bridges confers the jurisdiction over the erection of bridges upon the county court, and specifically includes bridges spanning navigable streams on county line. Section 76–1501, Arkansas Statutes, 1947.

█ The county judge can only contract, or perform a contract for and on behalf of the county, when acting in the capacity of a court. Lyons Machinery Co. v. Pike County, 192 Ark. 531, 93 S.W.2d 130, 131:

"No authority or power is conferred upon county judges by the Constitution or by statute to make contracts on behalf of the county. With certain limitations, such authority or power is conferred by the Constitution and statutes upon county courts. Article 7, § 28, Const. 1874; * * * Rebsamen, Brown & Co., v. Van Buren County, 177 Ark. 268, 6 S.W.2d 288."

"But it is equally well established that a County Judge, acting merely as a county official, has no power in Arkansas to make contracts binding upon the county; to make such contracts binding it is necessary that they be approved by the County Court (Citing Lyons Machinery Co. v. Pike County, supra.) The Constitution requires that county contracts be made by the County Judge acting in his judicial capacity * * *. (Citing Rebsamen, Brown & Co. v. Van Buren County, supra.)" Watts & Sanders v. Myatt, County Treasurer, 216 Ark. 660, 662, 226 S.W.2d 800, 801.

Calling of the county judge an administrative officer of the county does not evade this requirement, nor alter his position or confer any other or different position, character or authority upon him. If any action of his is to be made effective it must be as a County Court, except some limitations not of interest here.

█ Furthermore, this suit to enjoin the action of the county Court in this matter is a collateral attack on the judgment of the county court, and is an attempt to have this court usurp the jurisdiction of that court conferred on it by the Constitution and laws of Arkansas. "We have repeatedly held that a county court acting within the powers conferred by the Constitution and statutes of the state is a court of superior jurisdiction, and such powers judicially exercised are not subject to collateral attack." Sailer v. State, 192 Ark. 514, 518, 92 S.W.2d 382, 384, and cases there cited.

█ The County Court of Crittenden County having entered a judgment, it cannot be collaterally attacked in this Court.

This court is without jurisdiction to entertain this action, and without jurisdiction to issue an injunction in this cause as prayed, and the temporary restraining order heretofore entered will be dissolved, the prayer for a preliminary injunction is denied, and the complaint, with amendments thereto, will be dismissed for want of jurisdiction.

Findings of fact and conclusions of law in conformity with this opinion will be prepared and entered. If the parties have special findings they desire to have made or conclusions of law, they may prepare them and send them to the Court through the mails and they will be considered.