Sean PAGEL, Plaintiff,

v.

DAIRY FARMERS OF AMERICA, INC., Defendant.

Case No. CV 13–2382 SVW (VBKx).

United States District Court,
C.D. California.

Dec. 11, 2013.

Brian Daniel Hefelfinger, Daniel J. Palay, Michael Anthony Strauss, Palay Law Firm, Ventura, CA, for Plaintiff.

Allison C. Eckstrom, Keith A. Watts, Ogletree Deakins Nash Smoak and Stewart PC, Costa Mesa, CA, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR REMAND

STEPHEN V. WILSON, District Judge.

This is a wage and hour dispute that was filed in the Ventura County Superior Court and removed here under the Class Action Fairness Act of 1995 ("CAFA"). The question presented by the motion for remand is whether civil penalties sought by plaintiff under California's Private Attorney General Act ("PAGA"), Cal. Labor Code § 2699, are included in the amount in controversy for purposes of determining jurisdiction under 28 U.S.C. § 1332(d)(2). If they are not—or if the 75% of any PAGA penalty recovery that must be paid to California's Labor and Workforce Development Agency ("LWDA") is not part of the amount in controversy—then the federal courts lack jurisdiction over this action and the case must be remanded to state court. For the reasons discussed herein, the Court concludes that the full amount of potential PAGA penalties payable by defendant must be included in assessing whether "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"

under 28 U.S.C. § 1332(d)(2), and that therefore the motion to remand must be denied.

### I. Background

■ Plaintiff Sean Pagel contends that defendant Dairy Farmers of America ("DFA") failed to pay wages to him and other employees for missed meal periods and time spent donning and doffing uniforms at DFA's three California dairy processing facilities. In addition to claims under California Labor Code § 226 and California Business and Professions Code § 17200, Pagel seeks civil penalties as provided by PAGA. PAGA permits an employee to recover civil penalties on behalf of herself and other current or former employees that would otherwise be paid to the state LWDA if that agency had brought its own an enforcement action. Cal. Labor Code § 2699(a). The penalties are calculated based on the total number of employees who experienced the violation. *Id.* § 2699(f)(2). State courts do not require class certification to obtain PAGA penalties on behalf of a group of employees, because an individual plaintiff may act "as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court,* 46 Cal.4th 969, 986, 95 Cal. Rptr.3d 588, 209 P.3d 923 (2009). If the plaintiff prevails, 75% of total penalties assessed are paid to the LWDA, with the remaining 25% going to the aggrieved employees. Cal. Labor Code § 2699(I).

Pagel filed his complaint in the Ventura County Superior Court on behalf of all DFA employees who did not receive full pay for their time spent at work in DFA's manufacturing facilities in California. DFA removed the action here alleging jurisdiction under CAFA. Pagel moved to remand, arguing that the amount in controversy was below CAFA's $5 million jurisdictional threshold. Based on a settlement demand in a letter from plaintiff's counsel to DFA, however, the Court found that DFA had carried its burden of demonstrating the existence of CAFA jurisdiction. (Dkt. 19: Order on Mot. Remand, July 9, 2013, at 5–7); *see Babasa v. LensCrafters, Inc.,* 498 F.3d 972, 975 (9th Cir. 2007); *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 839–40 (9th Cir.2002). The motion to remand was therefore denied.

### II. Plaintiff's Renewed Motion to Remand

■ Pagel contends that a recent Ninth Circuit decision issued after the first remand motion was denied now makes clear that PAGA penalties cannot be aggregated to determine the amount in controversy. *See Urbino v. Orkin Servs. of California, Inc.,* 726 F.3d 1118 (9th Cir. 2013). Pagel's first remand motion did not argue that PAGA penalties (or at least the 75% paid to the state) were not part of the amount in controversy (Dkt. 14, 17), even though this theory had already been accepted by other federal courts in California.[1] Ordinarily, a motion for reconsideration would require analysis of whether Pagel's new argument is based on "a material difference in ... law from that presented to the Court before ... that in the exercise of reasonable diligence could not

---

1. *See, e.g., Hernandez v. Towne Park, Ltd.,* No. CV 12–2972–MMM, 2012 WL 2373372 at *16 (C.D.Cal. June 22, 2012) (CAFA's amount in controversy requirement not satisfied because "only 25% of the potential recovery on the representative action can be included in calculating the amount in controversy on the PAGA claim."); *Pulera v. F & B, Inc.,* No. CV 08–275–MCE, 2008 WL 3863489, at *4 (E.D.Cal. Aug. 19, 2008) ("The amounts recoverable by Plaintiff based on his PAGA claims are separate and distinct from the amounts recoverable by the State of California via the LWDA, and therefore these amounts may not be aggregated" for purposes of assessing diversity jurisdiction.).

have been known to [plaintiff] at the time of [the earlier] decision." Local Rule 7–18. But the instant motion raises a substantial question about the Court's jurisdiction over the subject matter of this case, which is a defense that cannot be waived. *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983). The Court has "a continuing duty to dismiss an action whenever it appears that [it] lacks jurisdiction." *Id.;* Fed.R.Civ.P. 12(h)(3). This is no less true in actions removed from state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a removed case], the case shall be remanded.").

DFA correctly observes that jurisdiction over the subject matter of a case is determined at the time the case is removed. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 293, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *United Steel Int'l Union v. Shell Oil Co.,* 602 F.3d 1087, 1091 (9th Cir.2010). DFA concludes from this that since the Court correctly found there was jurisdiction before the *Urbino* decision was announced, the issue cannot now be revisited. But Pagel is not arguing that a postfiling development, like a reduction in class size or the amount in controversy, has defeated jurisdiction. *Cf. St. Paul Mercury,* 303 U.S. at 293, 58 S.Ct. 586 ("[E]vents occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached.") Instead, Pagel argues that there never was jurisdiction because PAGA penalties are not part of the amount in controversy. The question is not whether something has changed since this action was removed, but whether "jurisdiction was properly invoked as of the time of filing." *United Steel,* 602

F.3d at 1092. Plaintiff contends that the Ninth Circuit's decision in *Urbino* shows that it was not. In view of the divergent opinions of the district courts in this area, this jurisdictional question deserves consideration.

## III. Divergence in District Court Opinions

District courts in California are split over the question of whether the full amount of PAGA penalties sought from a defendant should be included when calculating the amount in controversy, or only the 25% that would ultimately be paid to the aggrieved employee. Considering an individual action where the plaintiff asserted diversity jurisdiction under 28 U.S.C. § 1332(a), one court concluded that only the 25% payable directly to the employee plaintiff should be counted toward the amount in controversy. *Pulera,* 2008 WL 3863489, at *4. Two other courts reached the opposite conclusion in non-CAFA class actions, reasoning that the aggrieved employees' claims are "common and undivided" rather than separate and distinct,[2] so that the total civil penalties the defendant is exposed to in the action should be combined in assessing whether the plaintiff's damages meet the $75,000 threshold for jurisdiction under 28 U.S.C. § 1332(a). *See Urbino v. Orkin Services,* 882 F.Supp.2d 1152, 1164 (C.D.Cal.2011); *Thomas v. Aetna Health of California, Inc.,* No. CV 10–1906–AWI–SKO, 2011 WL 2173715, at *19 (E.D.Cal. June 2, 2011); *accord Urbino,* 726 F.3d at 1123–24 (Thomas, J., dissenting). The Ninth Circuit's recent decision in *Urbino* resolved this disagreement, holding that the penalties payable to other members of the potential class of employees may not be aggregated to satisfy the amount in con-

---

**2.** The significance of this distinction is addressed below.

troversy requirement for jurisdiction under 28 U.S.C. § 1332(a). *Urbino,* 726 F.3d at 1122–23.

*Urbino* did not address jurisdiction under CAFA. Prior to *Urbino,* several district courts had held that the entire potential PAGA recovery should be included in the amount in controversy when assessing jurisdiction in a CAFA case. *See Altamirano v. Shaw Industries, Inc.,* No. C–13–0939 EMC, 2013 WL 2950600, at *6–7 (N.D.Cal. June 14, 2013); *Quintana v. Claire's Stores,* No. CV 13–368 PSG, 2013 WL 1736671, at *7 (N.D.Cal., April 22, 2013); *Schiller v. David's Bridal, Inc.,* No. CV 10–616–AWI–SKO, 2010 WL 2793650, at *8 (E.D.Cal. July 14, 2010); *see also Andersen v. Schwan Food Co.,* No. C 13–2362 PJH, 2013 WL 3989562, at *5–6 (N.D.Cal. Aug. 2, 2013) (assuming 100% of PAGA penalties count toward amount in controversy but rejecting defendant's calculation as speculative); *Allen v. Utiliquest, LLC,* C 13–49 SBA, 2013 WL 4033673, at *7–8 (N.D.Cal. Aug. 01, 2013) (same); *Bell v. Home Depot U.S.A., Inc.,* CV 12–2499–GEB, 2013 WL 1791920, at *3–4 (E.D.Cal. Apr. 26, 2013) (same).[3]

Other courts have rejected this view and held that in a CAFA case, although the potential penalties attributable to all class members should be aggregated, only the 25% of this total amount that is paid directly to the class members should be included in the amount in controversy. *See Hernandez,* 2012 WL 2373372, at *16; *Walker v. CorePower Yoga, LLC,* CV12–4–WHQ, 2013 WL 2338675, at *4–5 (S.D.Cal. May 28, 2013); *Lopez v. Source Interlink*

*Cos.,* No. CV 12–3–JAM, 2012 WL 1131543, at *3 (E.D.Cal. Mar. 29, 2012); *see also Smith v. Brinker Int'l, Inc.,* No. C 10–0213 VRW, 2010 WL 1838726, at *2, *5 (N.D.Cal. May 5, 2010) (not disputing removing defendant's assumption that damage calculations are based on only 25% of PAGA penalties). Recently, the same district court that decided *Pulera* (an individual action) also reached this conclusion in a CAFA case. The court observed that under CAFA, "[i]n determining 'whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs,' the 'claims of the individual class members shall be aggregated.'" *Main v. Dolgen California, LLC,* No. CV 13–1637–MCE, 2013 WL 5799019, at *2 (E.D.Cal. Oct. 28, 2013) (quoting 28 U.S.C. § 1332(d)(6)). The court then concluded, however, that only the 25% payable to the aggrieved employees could be aggregated. *See id.* at *2–3. Under *Urbino,* the court reasoned, the 75% of recovered penalties that must be surrendered to the LWDA represents a "separate and distinct" interest that cannot be combined with the class members' interests to satisfy the amount in controversy requirement. *Id.*

## IV. The Anti–Aggregation Rule in Diversity Actions

▇ The federal courts have long accepted the general rule that multiple plaintiffs who join together in a single lawsuit to enforce their rights as individuals may not aggregate their claims to satisfy a jurisdictional threshold for the amount in controversy. *See Oliver v. Alexander,* 31

---

**3.** In *Babasa* the Ninth Circuit assumed without discussion that the full amount of PAGA penalties sought by the class plaintiff was included in the amount in controversy in concluding that the plaintiff's settlement demand letter adequately put the defendants on notice that they faced a total claim of $9.5 million. *Babasa,* 498 F.3d at 974–75. This assumption

does not appear to have been in dispute, however, and it is not part of the holding of the case. Instead, the court affirmed remand of the action to state court on the ground that the notice of removal was untimely under 28 U.S.C. § 1446(b), because defendant filed it more than thirty days after receiving the plaintiff's settlement demand. *See id.*

U.S. 143, 6 Pet. 143, 8 L.Ed. 349 (1832); *Thomas,* 2011 WL 2173715 (describing history of rule). This anti-aggregation rule has also long been applied to cases filed in federal court on the ground of diversity jurisdiction. *See Pinel v. Pinel,* 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916); *Troy Bank v. G.A. Whitehead & Co.,* 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911). "The settled rule is that when two or more plaintiffs having separate and distinct demands unite in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." *Pinel,* 240 U.S. at 596, 36 S.Ct. 416.

After Federal Rule of Civil Procedure 23 was amended in 1966 as part of the modernization of federal class action law, some courts initially concluded that aggregation of claims was permitted under the new rule. *See Snyder v. Harris,* 394 U.S. 332, 335–36, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (describing circuit split). The Supreme Court rejected this view, however, explaining that "[t]he doctrine that separate and distinct claims could not be aggregated was never, and is not now, based upon the categories of old Rule 23 or of any rule of procedure." *Id.* at 336, 89 S.Ct. 1053. Instead, it is based on the "interpretation of the statutory phrase 'matter in controversy.'" *Id.* The Court had "consistently interpreted the jurisdictional statute passed by Congress [28 U.S.C. § 1332] as not conferring jurisdiction where the required amount in controversy can be reached only by aggregating separate and distinct claims." *Id.* at 338, 89 S.Ct. 1053.

■ In *Snyder,* the Court acknowledged that "[i]t is linguistically possible, of course, to interpret the old congressional phrase 'matter in controversy' as including all claims that can be joined or brought in a single suit through the class action device." *Id.* However, when Congress amends statutory language that includes a phrase having a consistent history of judicial interpretation, it is presumed to be aware of this interpretation and to be employing "the already settled meaning of the phrase." *Comm'r v. Keystone Consol. Indus.,* 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993); *accord Bragdon v. Abbott,* 524 U.S. 624, 645, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). Since at least 1832, Congress has "consistently amended the amount-in-controversy section and reenacted the 'matter-in-controversy' language without change of its jurisdictional effect against a background of judicial interpretation that has consistently interpreted that congressionally enacted phrase as not encompassing the aggregation of separate and distinct claims." *Snyder,* 394 U.S. at 339, 89 S.Ct. 1053; *accord Zahn v. Int'l Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (anti-aggregation rule is part of "the Court's long standing construction of the 'matter in controversy' requirement of § 1332"), *overruled on other grounds by Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).

The Supreme Court has recognized only two exceptions to the anti-aggregation rule: (1) where a single plaintiff combines two or more of his own claims against a single defendant; and (2) where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder,* 394 U.S. at 335, 89 S.Ct. 1053. The first exception is not relevant here. The Ninth Circuit's *Urbino* decision considered whether PAGA claims fell under the second exception. *See Urbino,* 726 F.3d at 1122. The court

held that because each employee holds her own rights under California's Labor Code, the employer's obligation to its employees "is not 'as a group,' but as 'individuals severally.'" *Id.* (quoting *Gibson v. Chrysler Corp.*, 261 F.3d 927, 944 (9th Cir.2001)). Therefore, PAGA penalties payable to multiple employees cannot be aggregated to determine the amount in controversy. *Id.*

## V. The Anti–Aggregation Rule Does Not Apply to CAFA Cases.

*Urbino* was a diversity class action, not a CAFA case. *See Urbino*, 726 F.3d at 1121. Because jurisdiction was based on 28 U.S.C. § 1332(a), the named plaintiff had to satisfy the $75,000 jurisdictional threshold based on the value of his individual claims. *Id.; see Exxon Mobil*, 545 U.S. at 566–67, 125 S.Ct. 2611. The *Urbino* opinion does not mention CAFA.

When Congress enacted CAFA in 2005 against a backdrop of over 170 years of judicial interpretation of the phrase "matter in controversy" in the federal jurisdictional statutes, it added a completely new § 1332(d) which included this provision: "In any class action, the claims of the individual class members *shall be aggregated* to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6) (emphasis added).

Statutory interpretation begins with "the plain language of the statute." *United States v. Williams*, 659 F.3d 1223, 1225 (9th Cir.2011). Courts examine "not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." *Id.* (citation and internal quotation marks omitted). "If the plain meaning of the statute is unambiguous, that meaning is controlling and we need not examine legislative history as an aide to interpretation unless the legislative history clearly indicates that Congress meant something other than what it said." *United States v. Alexander*, 725 F.3d 1117, 1118–19 (9th Cir.2013).

The text of § 1332(d)(6) explicitly tells federal courts to "aggregate[ ]" the claims of individual class members when determining whether the matter in controversy exceeds the $5 million threshold. *See Standard Fire Ins. Co. v. Knowles*, ‑‑‑ U.S. ‑‑‑‑, 133 S.Ct. 1345, 1348, 185 L.Ed.2d 439 (2013) ("[T]he statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the plaintiff's] proposed class and determine whether the resulting sum exceeds $5 million."). This is an unambiguous instruction not to apply the traditional anti-aggregation rule to CAFA cases.[4] This is consistent with CAFA's purpose. *See Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir.2010) (Congress intended to provide federal jurisdiction to class actions of national importance and "dramatically expanded federal jurisdiction over class actions through CAFA."); *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 684 (9th Cir.2006) (Congress intended to broaden federal jurisdiction over class actions by aggregating class members' claims, requiring only minimal diversity, and making it easier for defendants to remove cases from state court).

4. Both the structure and language of the statute show that this directive ("shall be aggregated") does not govern assessments of the value of the "matter in controversy" under § 1332(a). First, the new rule was made a part of the completely revised § 1332(d), not a part of § 1332(a). Second by its terms the rule applies only to determinations of whether the value exceeds $5,000,000, not to determinations of whether the value exceeds $75,000.

Consistent with this unambiguous command, courts considering PAGA claims in CAFA actions generally accept that at least the portion of the penalties payable directly to the employees should be aggregated when assessing the amount in controversy. *See Main,* 2013 WL 5799019, at *2; *Hernandez,* 2012 WL 2373372, at *16; *Walker,* 2013 WL 2338675, at *4–5; *Lopez,* 2012 WL 1131543, at *3; *Smith v. Brinker Int'l,* 2010 WL 1838726, at *2. Courts divide, however, on the question of whether the 75% payable to the LWDA can be aggregated with the employees' claims. *Compare, e.g., Quintana,* 2013 WL 1736671, at *7 (yes) *with Hernandez,* 2012 WL 2373372, at *16 (no).

## VI. The "Either Viewpoint" Rule

The Ninth Circuit's decision in *Urbino* addressed the aggregation question only in the context of diversity jurisdiction, not in the context of CAFA. The opinion reiterated the long-standing rule against aggregating multiple plaintiffs' claims in diversity actions. *Urbino,* 726 F.3d at 1122 (citing *Troy Bank,* 222 U.S. at 40, 56 L.Ed. 81). The court then reasoned that to the extent the plaintiff asserted anything beyond his own individual interest in 25% of the PAGA penalties, "we are unpersuaded that such a suit, the primary benefit of which will inure to the state, satisfies the requirements of federal diversity jurisdiction ... [because] [t]he state as the real party in interest, is not a 'citizen' for diversity purposes." *Id.* at 1122–23.

■ In this case, although the benefits of Pagel's recovery of PAGA penalties would inure primarily to the State of California, the total amount that DFA would pay is the same regardless of who ultimately receives the money. If the amount in controversy is measured from DFA's

viewpoint, therefore, it exceeds $5 million and there is jurisdiction under CAFA.

■■ The federal courts have long relied on the "either viewpoint" rule to assess the amount in controversy when determining jurisdiction. *See Smith v. Adams,* 130 U.S. 167, 175, 9 S.Ct. 566, 32 L.Ed. 895 (1889) ("[T]he pecuniary value of the matter in dispute may be determined, not only by the money judgment prayed ... but in some cases ... by the pecuniary result to one of the parties immediately from the judgment."); *In Re Ford Motor Co./Citibank,* 264 F.3d 952, 959 (9th Cir. 2001) ("Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce."). The rule is usually applied in cases where the plaintiff pursues an equitable remedy. It can be difficult to place a monetary value on the proposed remedy when it is viewed from the perspective of the plaintiff, but relatively straightforward to ascertain the cost to the defendant of complying with the remedy. *See Packard v. Banton,* 264 U.S. 140, 142, 44 S.Ct. 257, 68 L.Ed. 596 (1924) ("The object of the suit is to enjoin the enforcement of the statute, and it is the value of this object thus sought to be gained that determines the amount in dispute."); *Mississippi & M.R. Co. v. Ward,* 67 U.S. 485, 492, 2 Black 485, 17 L.Ed. 311 (1862) (In suit to abate a public nuisance, "the removal of the obstruction is the matter of controversy, and the value of the object must govern."). The rule has thus come to be associated almost exclusively with cases seeking injunctive relief. *See Ford Motor Co.,* 264 F.3d at 958; *Zator v. Sprint/United Mgmt. Co.,* No. 09cv2577–LAB, 2011 WL 1168319, at *1 (S.D.Cal. Mar. 29, 2011). This is not because application of the "either viewpoint" rule to cases seeking damages yields perverse results, how-

ever, but simply because the rule usually serves no purpose in those cases. When a plaintiff seeks only monetary damages, the value of the object of the suit is generally the same whether it is measured from the plaintiff's viewpoint or the defendant's viewpoint. *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir.2002) ("In a case that seeks only money damages, the amount the defendant will lose is more or less the same.") [5]

Before CAFA, the Ninth Circuit held that the "either viewpoint" rule does not apply to class actions. *Ford Motor Co.*, 264 F.3d at 959. *Ford Motor Co.* involved six state class actions removed to federal court on the basis of diversity jurisdiction. *Id.* at 955. The Court of Appeals explained that the "either viewpoint" rule generally applies in diversity cases. *Id.* at 958. However, the court "acknowledged the inherent conflict between the 'either viewpoint' rule and the non-aggregation rule when calculating the amount in controversy in class action suits seeking equitable relief." *Id.* If a court were to assess the amount in controversy in a class action by measuring the amount of money the defendant would pay to all class members if it loses, this would subvert the anti-aggregation rule. *Id.* at 959. The court concluded that in class actions, the "either viewpoint" rule must yield to the non-aggregation rule. *Id.* at 958–59. This view is widely shared by the other Courts of Appeals. *See, e.g., Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1050 (3d Cir.1993). Thus, to avoid violating the anti-aggregation rule, when the value of

injunctive relief is measured in a class action, "the test is the cost to the defendants of an injunction running in favor of *one plaintiff.*" *Ford Motor Co.*, 264 F.3d at 959 (emphasis added).

 As discussed above, however, in enacting CAFA, Congress explicitly endorsed aggregation of class members' claims when assessing whether the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(6). The anti-aggregation rule continues to apply to diversity class actions, where jurisdiction is founded on 28 U.S.C. § 1332(a). *Urbino*, 726 F.3d at 1122. But the anti-aggregation rule does not apply to CAFA class actions, where jurisdiction is based on 28 U.S.C. § 1332(d). The "either viewpoint" rule is not used in diversity class actions because it would subvert the anti-aggregation rule. *Ford Motor Co.*, 264 F.3d at 958–59. It does not follow that the "either viewpoint" rule is prohibited in CAFA cases. The opposite is true: the long line of precedent tracing back to *Mississippi & M.R. Co. v. Ward* endorsing the use of the "either viewpoint" rule to assess the amount in controversy applies with equal force in CAFA cases. The reason for the prohibition on the rule having vanished, the rule should continue to be used to measure "[t]he value of the 'thing sought to be accomplished by the action.'" *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir.1944) (quoting *Smith v. Adams*, 130 U.S. at 175, 9 S.Ct. 566); *see Berry v. American Express Pub. Corp.*, 381

---

**5.** One district court has opined that "the either viewpoint assessment should be used only in cases in which the complaint includes a request for injunctive relief." *See Smith v. Pfizer, Inc.*, No. 05–CV–0112–MJR, 2005 WL 3618319, at *2–3 (S.D.Ill. Mar. 24, 2005) (citing *Uhl*, 309 F.3d at 983–84). Others have declined to go that far. *Zator*, 2011 WL 1168319, at *1 n. 1. This Court respectfully

disagrees with the opinion of the court in *Smith v. Pfizer* that the Seventh Circuit held in *Uhl* that the "either viewpoint" rule is restricted to measuring the value of injunctive relief. *Uhl* simply explained that in a case seeking only money damages, the rule is unnecessary since the relief sought is the same measured from either viewpoint. *Uhl*, 309 F.3d at 983.

F.Supp.2d 1118, 1123 (C.D.Cal.2005) ("Given the explicit statutory change allowing aggregation of claims in class actions, ... finding the amount of controversy from the aggregate cost to defendants does not circumvent any non-aggregation principles.")

Some legislators who supported CAFA have expressed the same view of the "either viewpoint" rule. According to the Report of the Senate Committee on the Judiciary on CAFA, the requirement that the amount in controversy exceed $5 million in the aggregate may be established "either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." S.Rep. No. 109–14, at 42 (2005), *as reprinted in* 2005 U.S.C.C.A.N. Vol. 4, p. 3, at 40. The Senate Report observed that some courts have declined to exercise jurisdiction over diversity class actions where the $75,000 threshold would be met only if damages were measured from the defendant's perspective, "because they have reasoned that assessing the amount in controversy from the defendant's perspective was tantamount to aggregating damages." *Id.* at 43. The report then explained that "[b]ecause [CAFA] explicitly allows aggregation for purposes of determining the amount in controversy in class actions, that concern is no longer relevant." *Id.*

Despite this language in the Committee's report, however, the Court's conclusion that the "either viewpoint" rule applies to the assessment of the amount in controversy in CAFA cases does not depend on these views expressed in the report. Even if resort to legislative history were necessary to resolve this issue, committee reports are a particularly unreliable source of insight into legislative understanding. *Exxon Mobil,* 545 U.S. at 568,

125 S.Ct. 2611 ("[J]udicial reliance on legislative materials like committee reports ... may give unrepresentative committee members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text."). To make matters worse, the Judiciary Committee's CAFA report was issued ten days after CAFA was signed into law, so it is an even less reliable guide to the intent of the enacting legislature. *See Weinberger v. Rossi,* 456 U.S. 25, 35, 102 S.Ct. 1510, 71 L.Ed.2d 715 (1982) ("*[P]ost hoc* statements of a congressional Committee are not entitled to much weight"); *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.,* 646 F.3d 169, 177 (4th Cir.2011) (report was issued ten days after CAFA became law); *College of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.,* 585 F.3d 33, 38 n. 2 (1st Cir.2009) (same). At most, the report establishes only that this is not a situation where "the legislative history clearly indicates that Congress meant something other than what it said." *Alexander,* 725 F.3d at 1118–19.

The fact that 75% of any PAGA penalties recovered in this action would be paid to the LWDA, not to individual class members, does not remove those sums from the amount in controversy calculation. They are part of "the object of the suit," *Packard,* 264 U.S. at 142, 44 S.Ct. 257, and from DFA's viewpoint are part of the total damages it will pay if the suit succeeds. *See Smith v. Adams,* 130 U.S. at 175, 9 S.Ct. 566; *cf. Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 701 (9th Cir.2007) (including taxes paid to state in amount in controversy). In *Guglielmino,* the plaintiffs alleged the defendant violated California wage and hour laws by treating its distributors as independent contractors instead of employees. *Id.* at 697. In addi-

tion to damages, the plaintiffs sought statutory attorneys fees and payment of back taxes. *Id.* The court observed that "[a]lthough these allegations seek payment of sums from [the defendant], they do not fall comfortably within the realm of 'damages'...." *Id.* at 701. Nevertheless, "because the recovery of these sums would entail a payment by [the defendant]," the court concluded that "they must be included within any amount-in-controversy calculation." *Id.; see Quintana,* 2013 WL 1736671, at *4 n. 33 (Because CAFA explicitly endorses aggregation of claims, *Guglielmino's* endorsement of the "either viewpoint" rule is "persuasive in the CAFA context.")

In contrast, in *Main v. Dolgen California,* a CAFA case decided after *Urbino,* the district court held that only the 25% of PAGA penalties payable to the class members could be included in the amount in controversy calculation. *Main,* 2013 WL 5799019, at *2. The *Main* court relied on *Urbino's* holding that civil penalties may not be aggregated to satisfy the amount in controversy requirement because " 'we are unpersuaded that such a suit, the primary benefit of which will inure to the state, satisfies the requirements of federal diversity jurisdiction.' " *Id.* (quoting *Urbino,* 726 F.3d at 1122–23). The court also cited its earlier decision in *Pulera* that "recovery under PAGA may not be aggregated because the amount recovered by a plaintiff 'based on his PAGA claims [is] separate and distinct from the amounts recoverable by the State of California via the LWDA.' " *Id.* (quoting *Pulera,* 2008 WL 3863489, at *4). This Court respectfully disagrees with this conclusion. Both *Urbino* and *Pulera* were diversity cases, not CAFA cases. Both decisions applied the anti-aggregation rule and considered whether the "common and undivided interest" exception to this rule permitted the LWDA's share of PAGA penalties to be combined with the plaintiffs' share in assessing the amount in controversy. *See Urbino,* 726 F.3d at 1122; *Pulera,* 2008 WL 3863489, at *3–4. For the reasons explained above, the Court concludes that CAFA abrogated the anti-aggregation rule and that therefore the question of whether PAGA penalties constitute a "common and undivided interest" held by the plaintiffs as a group is irrelevant to the determination of whether the amount in controversy exceeds $5 million for purposes of establishing jurisdiction under 28 U.S.C. § 1332(d).

## VII. Conclusion

Aside from the anti-aggregation rule applicable to diversity cases, plaintiff has not identified, nor has the Court found, any support in the caselaw for the theory that in calculating the amount in controversy, penalties paid to the state should be treated differently from other payments a defendant must make as the result of an adverse judgment. CAFA's rejection of the anti-aggregation rule makes the "either viewpoint" rule a valid method for assessing the value of the matter in controversy to determine whether jurisdiction lies under 28 U.S.C. § 1332(d)(2). Measuring the amount of damages to which DFA is exposed in this case, the amount in controversy exceeds $5 million, as set forth in plaintiff's settlement letter of March 27, 2013. (*See* Dkt. 19: Order at 5.) Hence there is jurisdiction under CAFA. Plaintiff's motion for remand is therefore DENIED.

IT IS SO ORDERED.